JOSEPHINE MEDLIN ET AL. v. JOHN WILKINS ET AL.

(Case No. 3317.)

1. ACQUIESCENCE — BOUNDARY.— When a particular line has been acquiesced in
   or recognized by adjoining owners as their common boundary, it affords
   strong presumption that such line is the true dividing line; and though this
   presumption is strengthened by lapse of time, no period has been fixed that
   would render it conclusive.

2. JUDGMENT.— Strangers to a judgment may rely on it by way of estoppel for
   their protection as against parties to it when they have acted on the faith of
   its recitals to their injury.

3. BOUNDARY — JUDGMENT — EVIDENCE.— When a recital in a consent decree
   recognizes a designated line as the boundary line between the parties thereto,
   such decree is admissible in evidence, not as full proof to establish the true
   boundary when relied on by a stranger to the decree, but as a circumstance
   tending to establish it, to be weighed with other evidence.

4. SAME.— The effect to be given to such recital would depend upon the degree
   of knowledge of their respective rights possessed by the parties to the decree
   at the time of its entry.

5. LAPSE OF TIME.— Lapse of time, as evidence tending to establish acquiescence
   in a designated boundary, would depend for its force as evidence upon the
   degree of information possessed as to his rights by the party sought to be
   affected thereby.   See opinion for a case illustrating this rule.

6. CHARGE OF THE COURT — PRACTICE.— It is improper in the court to empha-
   size in its charge any particular portion of the evidence, unless it certainly
   establishes, as matter of law, some issue involved in the proceeding; but a
   disregard of this rule will only afford ground for reversal when it is calcu-
   lated to mislead the jury.

7. LIMITATION.— It is not sufficient that some deed forming a link in the chain
   of title asserted be recorded to enable one to claim the benefit of the statute
   of five years' limitation; the deed or deeds, under which the party holds
   possession, must be recorded.

8. SAME.— Possessions, when consecutive and continuous, by successive vendees,
   held in compliance with the statute, will be regarded as one possession under
   the five years' statute of limitation.

ERROR from Bexar. Tried below before the Hon. George H. Noonan.

Suit by the plaintiffs in error for the purpose of trying the title to some thirty-eight town lots situated in the city of San Antonio.

The property sued for was described in plaintiffs' petition as "thirty-eight town lots situated in the city of San Antonio, . . . on the east side of the Madre Ditch, about one hundred and thirty varas below the Alameda, on the upper and lower side of North street, and numbered according to a plot made by G. Freisleben, city surveyor, as follows: . . . being the same property known as the Gertrudes de Torres suerte, and described in original grant and deed as follows: "One suerte of land with half a day's water, bounded on the north by the lands of Tomas Martines, west by the Acequa Madra, south by the Fuentes suerte, and east by vacant lands—having a front of one hundred and twenty varas on Acequia Madre."

The defendants, by several answers, pleaded "not guilty" and the statutes of limitations of five and ten years. They also pleaded that the land in controversy was formerly a part of the property of Philip Dimmitt, deceased; that in May, 1845, W. E. Jones, administrator of the estate of P. Dimmitt, deceased, under proper orders from the probate court of Victoria county, where the administration was pending, sold the property in controversy to Volney E. Howard, under whom the defendants claimed; that the land was at that time, and for years prior thereto had been, known as the "Fuentes suerte," was so known by the citizens of San Antonio, and was occupied and claimed as said suerte; that it commenced at the old stone gate in the east side of Madre ditch.

The parties agreed that the property in controversy was a part of the estate of Philip Dimmitt. The plaintiffs claimed as heirs at law of Dimmitt, and the defendants claimed under the sale made by W. E. Jones, administrator of the estate, to Volney E. Howard, in May, 1845.

The land in controversy was a part of the Gertrudes de Torres suerte.

The property sold by W. E. Jones, administrator, to Volney E. Howard, in 1845, was described in the deed of the administrator to Howard as a parcel of land . . . "owned originally by Ramon de los Fuentes, who sold to Jose Antonio de la Garza, who sold to Baron de Bastrop, whose executor sold to Philip Dimmitt; . . . bounded on the west by the main ditch, on the east by lands known at the time of the purchase by Baron de Bastrop as Royal Lands,

north by other lands, at that time owned by Baron de Bastrop, and south by the *Calle de los Cuartellos*, fronting on main ditch three hundred varas, and running back along the *Calle de los Cuartellos* four hundred and forty varas, containing twenty-two acres, more or less."

The deed from Howard to Evans gave the same description of the land given in the deed from Jones, administrator, to Howard. The deed from Evans to Beck described it as "bounded on the west by the main ditch, extending from the Goliad road up said ditch to an old stone dam pointed out by Jose Antonio de la Garza, who formerly owned said tract of land; bounded south by the Goliad road, extending four hundred and forty varas, and running northeast, as designated by the present line of fence; thence west to the said stone dam, containing thirty acres, more or less."

Beck cultivated the property for some time and then cut it up and sold it out in town lots. The defendants claimed under this title.

It appears from the transcript that Dimmitt owned three suertes of land in the city of San Antonio, they being the Martines, Torres, and Fuentes suertes, which join each other.

The order of sale under which Jones sold required him to sell for cash, "with appraisement, a sufficient amount of property in the county of Bexar as will be sufficient to redeem the lands of said estate sold in March, 1844, for the taxes of the years 1842 and 1843, and to defray expenses of administration."

Verdict and judgment for defendants. No space can be given for even a condensed statement of the evidence contained in the voluminous record.

*A. M. Jackson, Jr.*, for plaintiff in error, on the alleged error of the court in emphasizing evidence bearing on a controverted matter where the evidence was conflicting, cited: Duffell *v.* Noble, 14 Tex., 655; Gray *v.* Burk, 19 Tex., 231–2; National Bank of Warsaw *v.* Currie, 44 Mo., 91; Parker *v.* Donaldson, 6 Watts & Serg. (Penn.), 132.

On the binding effect of the compromise decree he cited: Hardy *v.* De Leon, 5 Tex., 245; Browning's Adm'x *v.* Atkinson, 37 Tex., 633; H. & T. C. R'y Co. *v.* Hodde & Werner, 42 Tex., 467; Ellis *v.* Mathews, 19 Tex., 398.

*Waelder & Upson*, for defendant in error.

WATTS, J. COM. APP.— Upon the trial the court, among other things, instructed the jury as follows: "The jury will also find for

the defendants if they believe that the plaintiffs, by their agreement, acquiesced in the north line of the Fuentes suerte as occupied by J. H. Beck. In determining this question, the jury may take into consideration the decree entered by consent in the case of James Dimmitt and others against Angel C. Torres and others, that is, if ratified by plaintiffs, and if the jury believe that the plaintiffs in this case are the same plaintiffs that were in the case against Torres, or that the present plaintiffs represent all the interests that were represented by the plaintiffs in that case."

And the court refused to give the following instruction asked by plaintiffs in error upon that issue: "The plaintiffs further ask the court to charge the jury that they will disregard the judgment and petition in the case of Dimmitt *et al. v.* Torres *et al.,* and not consider the same in arriving at their verdict."

Plaintiffs in error assign as error the action of the court in giving the first and refusing the latter instruction. The only evidence in the record upon which the charge of the court is based is the consent decree in the case of Dimmitt and others *v.* Torres and others. Neither of the defendants in error were parties to that suit, nor does it appear that they are privies with any of the parties.

It may be assumed that the lots there involved were situated on the Torres and Martines suertes. The consent decree, after providing for a distribution of the lots between the contending parties, proceeds to give a general description of the parcel of land upon which they were situated, as follows: "The above mentioned lots of land are all parts and parcel of and contained in the following described tract of land, to wit: one suerte situated in the incorporated limits of the city of San Antonio, in the county of Bexar, state of Texas, on the east side of the San Antonio river, and of the upper *Acequia Madre,* and in that part of the city called ' Alamo,' entitled to twenty-four hours of water, situated on the south side of the ' Alameda,' and bounded on the north by said Alameda, on the west by said *Acequia Madre,* on the south by lands formerly belonging to the estate of P. Dimmitt, deceased, and lately to J. H. Beck, deceased, and on the east by lands of the said city of San Antonio, which were sold May the 10th, 1860. The said herein described suertes having a front of four hundred varas on said ' Alameda,' and containing sixteen acres of land." That decree was made and entered on the 13th day of February, 1868, and this suit was commenced on the 18th day of July, 1868.

In the consideration of the question presented, it should be borne in mind that Jones, as administrator of Dimmitt's estate, had con-

veyed to Howard the Fuentes suerte, describing it according to the description in the title papers. Howard had conveyed to Evans by the same description. Evans, however, in his deed to Beck, instead of conveying a tract of twenty-two acres, more or less, conveyed thirty acres, more or less, naming therein a stone dam on the *Acequia Madre* as a corner, and bounded the land on the south by the Goliad road, reciting in the deed that it was the same land theretofore owned by Volney E. Howard, who purchased it at the administrator's sale of the property of Philip Dimmitt, deceased, as appeared from the county records.

Thus the point is narrowed down to this: Do the recitals in the consent decree, to the effect that the parcel of land in which the lots then in litigation were included adjoined on the south lands which "formerly belonged to the estate of P. Dimmitt, deceased, and lately to J. H. Beck, deceased," furnish such evidence of a recognition of, and acquiescence in, that line, claimed by Beck as would authorize or support a finding of the jury to that effect?

The doctrine of acquiescence, as applicable to common boundary lines, usually has its foundation in lapse of time and matters *in pais,* and may be stated as follows: Where a particular line has been acquiesced in, or recognized by, adjoining owners as their common boundary, that affords a strong presumption that it is the true line. While the presumption is strengthened by lapse of time, yet no period has been fixed that will render such presumption conclusive; other considerations than the lapse of time must be considered. In this respect each case must be determined by its own particular circumstances. Floyd *v.* Rice, 28 Tex., 341.

But the lapse of time and such other circumstances have no relation to the question under consideration, which is, Do the parties, by that consent decree, recognize and acquiesce in the particular line claimed by the defendants in error? Howard purchased, and, so far as appears from the record, only claimed the Fuentes suerte, and no particular point is called for in his deed on the *Acequia Madre* as his upper corner.

The language in the consent decree relied upon by defendants in error, we think, is not susceptible of the construction that is implied by the charge of the court. It appears that the only reference to the matter in the decree is in these words: Bounded "on the south by lands formerly belonging to the estate of P. Dimmitt, deceased, and lately to J. H. Beck, deceased." The reference is not to the line as claimed by Beck or any other person, but is to the line of the lands lately owned by Beck. Jones had conveyed to Howard

the Fuentes suerte, and it is not shown or claimed that the estate had disposed of the other adjoining suertes.   It seems to us that the legal effect and import of the language used is no stronger against the plaintiffs in error than if the call had been, in so many words, for the true northern boundary line of the Fuentes suerte.

That decree was entered in a suit pending between the plaintiffs in error and other parties; defendants in error were not parties to that suit.   The general rule that judgments are not binding upon strangers is so far mutual that strangers cannot take advantage of the same to affect the parties to them.   There are two recognized exceptions to the general rule, the one where some matter of public right or duty is determined, such as ferry rights and other franchises, and the liability to repair roads, sidewalks, etc.   Then, except as between the immediate parties and privies, such judgments are only *prima facie* evidence of the matter determined. Wharton's Law of Evidence, vol. 1, § 794.   The other is where strangers have acted upon the faith of recitals in a judgment or decree to their injury; then, ordinarily, they can assert it as an estoppel against the parties.

Here the court asserts the proposition, that if plaintiffs in error have ratified the consent decree, to which they were parties, and which they procured to be entered, then the recitals in that decree are sufficient evidence to sustain a verdict against the plaintiffs in error, on the ground that they had acquiesced in the north boundary lien of the Fuentes suerte as claimed by Beck.   As heretofore seen, the recitals in the decree, relied upon by appellees for that purpose, are not sufficient within themselves to sustain a verdict affirming such acquiescence.   Acquiescence or non-acquiescence is a question of fact to be determined from the facts and circumstances of each case.

It seems to us that when, by the recitals of a consent decree, the parties thereto recognize a given line as a common boundary between them and adjoining proprietors, that such decree would be admissible as evidence in behalf of strangers, not as full proof, but as a circumstance tending to establish the fact, and to be considered with all the other facts and circumstances in the particular case.

The effect to be given to such recitals as evidence would greatly depend upon the knowledge of the party to be affected thereby, respecting the subject matter out of which the acquiescence is claimed to arise, and the intention of the party with respect to that matter.   To illustrate, suppose that such recitals were distinctly made in a consent decree, by parties who were fully informed of

their rights in the premises, then such recitals would be considered strong evidence of the acquiescence. While on the contrary, if they were ignorant of their rights, that fact would ordinarily impair the force of the recitals as evidence of acquiescence.

So as to the effect of lapse of time as evidence tending to establish acquiescence, if the party is not informed as to his rights, then the lapse of time ordinarily would furnish but slight evidence of acquiescence.

The recitals in the decree under consideration would furnish, at most, but slight evidence tending to establish acquiescence, upon the part of plaintiffs in error, in the line as claimed by Beck. For that line is not distinctly called for in the decree. But the call is for the Fuentes suerte, "formerly owned by Dimmitt, deceased, and lately by Beck, deceased." Besides, this decree was made and entered but five months before this suit was brought, which is of itself a potent circumstance tending to show that it was not the intention of plaintiffs in error to recognize and acquiesce in that as the true boundary line, to contest which they brought this suit.

Our conclusion is, that the court erred in giving the instruction under consideration.

Plaintiffs in error also complain that the court, in the charge, gave undue prominence to the evidence of the declarations of deceased persons as to the corner and the north boundary line of the Fuentes suerte; and thereby indicated to the jury the mind of the court as to the effect of that evidence.

Except in those cases where certain evidence as a matter of law establishes an issue, it is improper for the court in the charge to call the attention of the jury to any particular portion of the evidence. The court decides and determines upon the admissibility of the evidence, while it is the sole province of the jury to determine its credibility and weight. Everything that is admitted as evidence by the court must be received and considered as such by the jury. But as to its credibility or weight, that is alone for the jury to determine.

However it is not every infraction of this rule by the court that would authorize or require a reversal of the judgment. That result only follows when from the entire record it appears that the error was such as was calculated to mislead the jury, and that the party complaining may have been injured thereby.

The charge, after calling the attention of the jury to the evidence as to the declarations of deceased persons, proceeded in these words: "If, then, the jury believe from the evidence as to the declarations of deceased persons, as above stated, and from the other evidence in

the case, that the strip of land or lots in controversy are a part of the Fuentes suerte, they will find for the defendants. And they will likewise find for defendants if they believe, from the evidence, that the administrator of Dimmitt fixed or agreed upon the boundary or lines of the Fuentes suerte, and that Howard bought said suerte with reference to such line," etc.

Jones, administrator of Dimmitt's estate, as a witness for defendants in error, testified that he was not acquainted with the lands of the estate in Bexar county; these lands had been inventoried by a previous administrator; that they were pointed out to him on the day of sale by Rodriguez, and that a number of persons who were desirous of bidding on the land accompanied them, and were present when the lands were pointed out to him by Rodriguez. That he advertised and sold the land from the description given in the title papers of each lot or tract, and so deeded them.

F. L. Paschal, also a witness for defendants in error, testified, in effect, that he was along as an appraiser when Rodriguez pointed out the land; that he pointed out the lines of the land that was sold, and said the beginning corner was at the first stone dam, about one hundred and fifty varas below Commerce street; that Rodriguez called the land Fuentes suerte; that the old dam was still there, and was the first dam below Main street.

On cross-examination the witness stated that Rodriguez said the tract of land in the lines he pointed out contained three suertes and a fraction.

On re-examination he said that it was his understanding that the land appraised, and on that day sold to Howard, commenced at the stone dam and ran down to Goliad street, and was the property pointed out by Rodriguez.

This constitutes all the evidence in the record as to the declarations of deceased persons having any reference to the identification of the line in dispute, or as to the fixing or agreeing upon the line by the administrator of Dimmitt's estate. It would seem that Howard knew as much about the location as did the administrator; the same means of information was equally accessible to both. Now, notwithstanding Rodriguez told them that the lines pointed out included three and a fraction suertes; notwithstanding Howard purchased and received a deed to but one, and that the most southern of the three suertes belonging to the estate, it is not made to appear that Howard made the purchase, relying upon the stone dam as one of the corners of the Fuentes suerte, but from the statement of Rodriguez, that the lines he pointed out contained

three and a fraction suertes, and the description of the land he received would, when considered with reference to the entire record, seem to negative the idea that he did so.

Whatever may have been Paschal's impressions as to the land pointed out, the statements of Rodriguez, when considered together, ought not to have misled Howard in making his purchase.

In view of the evidence upon which the charge complained of is founded, it is probable that the jury may have been misled, and that to the injury of plaintiff in error.

The charge to the effect that plaintiffs in error are bound by the acts of Jones, as the administrator of the estate, in establishing or pointing out the lines and corners of the land sold by him, when considered with reference to the case made by the evidence, is more favorable to defendants in error than would be authorized by law.

It appears that as Jones was not informed as to the location of the lands belonging to the estate, he had Rodriguez point them out to him. The record does not show that Jones ever pointed out, or undertook to establish or fix, any of the lines and corners of the Fuentes suerte. Or that he ever made any representations concerning the land to Howard or any other person. On the contrary, he states that he advertised, sold and conveyed the land according to the description given in the title papers then in his possession.

If the representations of the administrator as to the lines and corners of land that he is about to sell under order of court could have in any case the effect to so bind the estate or heirs as to vest in the purchaser title to other lands of the estate than those advertised and sold, and which sale confirmed by the court, it would have to be when the administrator's declarations as to the lines and corners are positive and misleading in character, and the purchaser had relied upon such declarations in making the purchase.

Generally the rule of *caveat emptor* applies to probate sales. Thompson *v.* Munger, 15 Tex., 523; Williams *v.* McDonald, 13 Tex., 322; Ward *v.* Williams, 45 Tex., 617.

In the last named case it is in effect held that while, at law, the rule of *caveat emptor* governs a purchase at administrator's sale, in equity there may be such fraud or mistake as would entitle the purchaser to relief; but that the burden would be upon him to establish such fraud or mistake.

The evidence does not establish either fraud or mistake, such as would have entitled Howard to relief; for it is not shown that he was induced to make the purchase, relying upon anything that

either Jones or Rodriguez said or did respecting the lines and corners of the suerte purchased by him.

Nor do we find anything in the record indicating that Evans in his purchase from Howard relied upon such representations as might have been made by Rodriguez about the lines and corners of the tract. On the contrary the recitals in his deed from Howard would indicate that he purchased according to the title papers, and the description therein contained. And as for Beck, the recitals in his deed from Evans repel any such presumption as to him. It is recited therein that the tract is " bounded west by the main ditch, extending from the Goliad road up said ditch to an old stone dam, pointed out by Jose Antonio de la Garza, who formerly owned said tract of land."

From a consideration of all the evidence found in the record adduced to that issue, it seems clear that the court erred in the charge as given. For appellees failed to establish such facts as would have entitled Howard, or any one claiming under him, to relief on the ground of fraud or mistake. And as it is not shown that any one acted on what either Jones or Rodriguez said or did respecting the lines and corners of the land, there can be no estoppel.

The rules of law applicable to questions of boundary are familiar and need not be further discussed.

As to the question of five years' limitation, it has been held that to give title to land, the deed or deeds under which the party asserting the plea holds possession must be duly recorded. That it is not sufficient that some deed in the asserted chain of title under which he enters is duly recorded. For that would not constitute the requisite notice of the character of the adverse possession held by the party. Porter v. Chronister, 58 Tex., 56.

It must not be understood that successive possessions, following, and in privity with each other, where there is no break in the possession, and each party occupies the land under a recorded deed evidencing his claim to the land, and where each for the time he has ·been in possession has complied with all the requisites of the statute, cannot tack their several possessions so as to complete the bar of five years. For under such circumstances the possession of the one inures to the other. Brownson v. Scanlan, decided at Austin, 1883 (59 Tex., 222).

If, upon the trial, it should be determined that the lots in controversy are not upon the Fuentes suerte, and that plaintiffs in error have not acquiesced in the line, as claimed by defendants in error, then the issue as to valuable improvements may become material.

The law applicable to such case is discussed and applied in Gatlin v. Organ, 57 Tex., 11.

The remaining errors complained of it is not deemed necessary to discuss, as they are such as are not likely to occur on another trial. We think that the judgment ought to be

REVERSED AND REMANDED.

[Opinion adopted October 26, 1883.]