### CLUB LAND AND CATTLE COMPANY ET AL. v. DALLAS COUNTY ET AL.

Decided June 22, 1901.

**1.—Administrator's Sale of Land—Deed—Covenants of Warranty.**

The powers of an administrator relating to the sale and conveyance of land are wholly statutory, and he can not bind the estate by a covenant of general warranty in a deed, nor by any oral agreement, express or implied, to indemnify the purchaser for any loss he may sustain by reason of any defect in the title to the land conveyed.

**2.—Same—Caveat Emptor.**

At law the rule of caveat emptor applies to a sale of land made by an administrator.

**3.—Same—Equitable Relief—Fraud and Mistake.**

The rule that in equity relief may be granted in certain cases for fraud and mistake does not apply in a case where both parties are cognizant of the defect in the title, and the administrator, stipulating in the deed that he does not bind himself personally, simply makes an oral promise, as administrator, to procure for the purchaser a good title at some time in the future. Warren v. Harrold, 92 Texas, 417, distinguished.

**4.—Sale of County School Lands—Consideration—Agent's Services.**

The county commissioners court has power to sell the lands granted to the county by the State for school purposes, but not for the consideration of the services of an agent in surveying and subdividing the land.

**5.—Same—County May Validate Voidable Sale.**

Where a county's school lands are sold in consideration of an agent's services in surveying them, such sale is not absolutely void, but may be validated by the action of the commissioners court in thereafter placing in cash the price for which the land was sold, the equivalent value of the agent's services, to the credit of the permanent county school fund.

**6.—Same—Color of Title.**

Where a county sold part of its county school lands by a general warranty deed in consideration of an agent's services, remote grantees who took possession under that title prior to any repudiation of the sale by the county were not trespassers, but held under color of title.

**7.—Same—Claim Against County—Value of Agent's Services—Limitation.**

Subsequent purchasers of the land under the county's deed were not bound to repudiate the original sale and sue the county on the claim for the agent's services, nor to anticipate that the county would repudiate the sale, and hence limitation did not begin to run against such claim for services until the county repudiated the sale by its suit to recover the land.

**8.—Same—Equitable Relief—Presentation of Claim to Commissioners Court.**

The claim for the agent's services having been in effect allowed by the commissioners court at the time the land was conveyed in satisfaction thereof, it

Vol. 26 Civil—29.

was not necessary that it should be again presented for allowance in order to be enforced by a court of equity against the county in an action in which the county sought the cancellation of its voluntary deed, of which such services were the consideration.

**9.—Same—Rents.**

The county was entitled to recover rents only from the date of filing its suit for cancellation of its deed whereby it repudiated the sale and demanded the possession of the land.

Appeal from Archer.  Tried below before Hon. A. H. Carrigan.

*F. E. Dycus, Theodore Mack*, and *Capps & Cantey*, for appellants.

*R. B. Allen, G. C. Wright*, and *K. R. Craig*, for appellees.

HUNTER, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by Dallas County on the 13th of June, 1900, in the District Court of Archer County, against the Club Land and Cattle Company, a Missouri corporation, to recover blocks 39, 47, 48, and 49 of the subdivisions of the Dallas County school lands situated in Archer County and containing 711 acres.  The disseizen was laid as of January 1, 1898, and rents were claimed from that date.

The defendant cattle company answered not guilty, and pleaded the three, five, and ten years statutes of limitation.  It also pleaded specially that, in 1879, the Commissioners Court of Dallas County entered into a contract with John Henry Brown whereby the said Brown was to survey, subdivide, map, and classify the Dallas County school lands lying in Archer County and consisting of about 13,000 acres, in consideration of which services the county agreed and bound itself to pay him the sum of $250 in cash and to convey to him the land in controversy herein; that in accordance with said contract said Brown did all that was required of him and made report of his work to said Commissioners Court on June 9, 1879, which report was received and accepted by the court, and it thereupon passed and entered an order directing the county judge of Dallas County to convey said lands to said Brown in complete satisfaction of said contract; that in pursuance of said order said county judge on said date conveyed said lands to Brown in fee simple, with covenants of general warranty, as the act and deed of said county; that the value of Brown's services for which said lands were conveyed was $1250; that said county now claims that said conveyance was void in law because the consideration was other than money, and the sale, therefore, one the Commissioners Court had no power to make; but that said county ought not to be heard in such a plea or permitted to recover said land without first paying for the labor and services of the said Brown which it received in consideration of said conveyance, and to which the defendant cattle company is entitled upon the covenants of general warranty aforesaid, and in equity and good conscience,—it being a remote vendee of the land.  It prayed that its title be quieted, but in the event the plain-

tiff should recover the land, that it have judgment against the county for $1000, with 6 per cent interest from June 9, 1879, and for general relief.

It also impleaded R. B. Bishop personally and as administrator of the estate of Elam W. Harrold, deceased, upon the covenants of warranty contained in the deed from Bishop, as administrator, to one Carver, who purchased the land for the cattle company, and upon oral agreements and promises to procure a good title from Dallas County to the lands sued for, it being then (in 1898) understood by Carver and by Bishop that the title made by the Commissioners Court to Brown was defective for want of power in the Commissioners Court to convey the land in consideration of Brown's labor and services in surveying and subdividing it. The amount paid by Carver for the cattle company to Bishop as administrator of Harrold's estate for said land was $1.50 per acre on October 21, 1898, or $1066.50, and a recovery of this sum is prayed for, with interest as 6 per cent per annum from said date.

Bishop, as administrator and personally, answered by demurrers and special exceptions, general denial and statute of frauds, and adopted the answer of the cattle company as pleaded against the plaintiff, Dallas County.

In replication Dallas County pleaded to the answer and cross-action of the cattle company a general denial, and further that the claim of $1000 for Brown's services in surveying and mapping the lands was never presented to the Commissioners Court for allowance, and therefore suit can not be maintained thereon, and furthermore that said claim is barred by the statute of limitation of four years.

The case was tried by the court without a jury on March 5, 1901, and resulted in a judgment in favor of Dallas County against the cattle company for the lands sued for and $120.48 for rents from October 2, 1898, to the day of trial, denying the cattle company recovery for Brown's services in surveying and mapping the land, because barred by the statute of limitation of four years, but rendering judgment in its favor against R. B. Bishop, as administrator of the Harrold estate, for $1217.58,—the same being the purchase money paid to said administrator for said land and interest,—but denying recovery against Bishop personally. From this judgment both the cattle company and Bishop, as administrator, appeal upon conclusions of facts and law filed by the District Court, the substance of which is as follows:

The land sued for was part of the public free school lands granted to Dallas County by the State of Texas for free school purposes. It was conveyed to John Henry Brown on June 9, 1879, by order of the Commissioners Court of Dallas County with covenants of general warranty, in consideration of services rendered by him in subdividing and platting said school lands. The cattle company's title rests upon mesne conveyances under covenants of general warranty from Brown to it, Brown having received $1422 as consideration therefor, and Bishop, as administrator of Harrold's estate, having received from the cattle company

$1.50 per acre, amounting to $1066.50, for the 711 acres on October 14, 1898, the date of his deed to Carver, and said company has been in actual possession and occupation of said land ever since said date. The sale by Bishop, as administrator, to Carver was regularly ordered, made, reported and confirmed, and deed ordered made, said deed containing the following clause after the covenant of general warranty: "I do not bind myself personally, and I make this covenant of warranty in my capacity as administrator so far as I have the power and authority to do so and no further." Signed and acknowledged by R. B. Bishop "as administrator of the estate of E. W. Harrold, deceased."

On the 21st of October, 1898, Carver conveyed the land to the defendant cattle company, for whom he had bought it at the administrator's sale. At the time Carver bought the land, he, as well as Bishop, knew of the defect in the title by reason of the want of power in the Commissioners Court to make the sale for the consideration named, and Bishop agreed orally as administrator that if Carver would pay the purchase price he would have Dallas County make a good and perfect title to the land, and without this promise Carver would not have bought and paid for the land. Bishop afterwards made efforts to get Dallas County to perfect the title but failed. There is yet $2000 in the hands of Bishop belonging to the Harrold estate, and administration is still pending thereon in Tarrant County. The Club Land and Cattle Company has succeeded to all the rights and claims growing out of the sale of this land that accrued to John Henry Brown. The rental value of the land since June 13, 1898, has been 6 1-4 cents per acre per annum. The value of the service of John Henry Brown rendered to Dallas County and accepted by it, and in payment and discharge of which the land in controversy was conveyed to him, in addition to the $250 paid him in cash, is and was $500, and the land conveyed to Brown was not worth more than $500 at the time it was conveyed to him. The contract made by the Commissioners Court with Brown and the conveyance of the land to him were made and accepted and carried out in good faith. Brown conveyed to East & Milton, in 1883, the land in controversy, and the said grantees took immediate and actual possession of said land, and they and those holding under them have had and held exclusive, peaceable, adverse possession thereof ever since, and paid all taxes thereon, claiming to own the same openly and against the world, under duly registered deeds, and Dallas County has had during the same time actual and constructive notice and knowledge thereof, and never repudiated nor attempted to repudiate the conveyance to Brown until this suit was filed, but silently acquiesced therein.

We think the court erred in rendering judgment against the Harrold estate on the covenants of warranty contained in the administrator's deed. The administrator had no power to bind the estate by such a covenant, nor by any oral agreement, express or implied, to indemnify the purchaser for any loss he might sustain by reason of any defect in the title to the land conveyed. The powers of an administrator relating

to the sale and conveyance of lands are wholly statutory. At common law he had no power to sell lands for any purpose, and in Texas he can only sell them when duly ordered to do so by the probate court, which sale must be reported to such court and confirmed. Rev. Stats., art. 2144. "After a sale has been confirmed by a decree of the court, upon the purchaser complying with the terms of the sale, the executor or administrator shall execute and deliver to the purchaser a proper conveyance of the property purchased by him." Id., art. 2146. The statute then declares, in effect, what the deed shall contain, in cases where the sale is for cash, as in this case. Art. 2147. "If the property sold be real estate, the conveyance shall be by deed, and shall recite the decree of the court confirming the sale and ordering the conveyance to be made, and such conveyance shall vest the right and title that the testator or intestate had in such real estate in the purchaser, and shall be prima facie evidence that all the requirements of the law have been complied with in making such sale." At law, the rule of caveat emptor applies in such sales. Ward v. Williams, 45 Texas, 619; Hawpe v. Smith, 25 Texas Supp., 451; Walton v. Reager, 20 Texas, 109; Lynch v. Baxter, 4 Texas, 437; Williams v. McDonald, 13 Texas, 323; Medlin v. Wilkins, 60 Texas, 417. In equity relief may be granted in certain cases of fraud or mistake, but not in a case where both parties are cognizant of the defect in the title, and the administrator simply makes an oral promise to some time in the future procure a good title from the real owner. The failure to perform the agreement would not be a fraudulent representation of any fact,—only a promise to do something which, as administrator, the purchaser knew he had no power to make, as he knew also, or must be held to have known, that in order to bind himself personally, the promise should be in writing. Rev. Stats., art. 2543, sec. 1. There was no promise in writing to perfect the title, but on the other hand, the clause in the deed recited in our conclusions of fact, shows that Bishop expressly stipulated that he did not bind himself *personally,* and the deed must be held to have embodied the entire contract of sale between the parties. The clause referred to, and the fact that Bishop was acting as an administrator, distinguish this case from that of Warren v. Harrold, 92 Texas, 417; and that clause alone distinguishes it from the case of Sumner v. Williams, 8 Massachusetts, 162, which latter case has been doubted. See Bigelow's Overruled Cases, p. 485.

The court did not err in rendering judgment in favor of Dallas County for the lands sued for. The Constitution and the statute gave the county the power "to sell or dispose of such land in whole or in part, in manner to be provided by the commissioners court of the county." Const., art. 7, sec. 6; Revised Statutes, art. 4271. But not for the consideration of Brown's services in surveying and subdividing it. Tomlinson v. Hopkins County, 57 Texas, 572. This sale, however, was not, in our opinion, absolutely void; it was void only in the sense that it was made for a consideration which the law did not authorize.

If the Commissioners Court, at the time or afterwards, had placed the price in cash for which the land was sold to the credit of the permanent county school fund, we see no reason why the sale would not have been thereby validated. The county is responsible for the fund if diverted (Constitution, article 7, section 6; Waggoner v. Wise County, 17 Texas Civil Appeals, 227), and it follows that it might voluntarily make, or be compelled to make, good any amount unlawfully diverted. The remote grantees who took possession under the county's deed were not trespassers, for the deed to Brown with its covenants of general warranty gave them the right to enter upon and hold the land and use it as a purchaser until the county repudiated the action of its Commissioners Court in making the sale. They held under color of title. Black's Law Dic., p. 222; Anderson's Law Dic., p. 195.

The case of Tomlinson v. Hopkins County, supra, was a suit to cancel the deed made by order of the Commissioners Court to a portion of that county's school lands in consideration of Tomlinson's services in locating, surveying, and procuring patents on the same, and while the question as to whether the deed in that case was absolutely void seems not to have been raised or discussed, the court exercised equitable jurisdiction and canceled the deed, which courts of equity decline to do in cases where the deed is or would be void on its face. Purinton v. Davis, 66 Texas, 455; 3 Pom. Eq. Jur., secs. 1377, 1399.

In Cassin v. La Salle County, 1 Texas Civil Appeals, 131, Justice Stephens, in delivering the opinion of this court, said: "While appellee brought this suit in trespass to try title, the purpose of the action was to annul a deed executed by the county of La Salle to appellant, for want of authority in said county to sell on the terms agreed upon. Appellant in his answer set up his equities as vendee under the contract sought to be annulled, and alleged the money paid appellee and the valuable improvements made under the contract upon the land sought to be recovered. We think under our system that the case as thus presented should have been treated as a suit for rescission in which the right to the value of improvements and the measure of its allowance should depend on principles of equity, and not on the provisions of the statute regulating the action of trespass to try title." In this case, which involved the want of authority in the Commissioners Court to sell the county's school land upon the terms not authorized by law, this court declined to treat the sale and deed as absolutely void, as the District Court held it to be, but only "invalid" (Id., page 130), and decided that the defendants' rights as against the county's action of trespass to try title were such as courts of equity would respect and enforce in cases where the rescission of a contract is sought.

In Cole v. Bammel, 62 Texas, 111, Mrs. Cole, a married woman, joined by her husband, had executed a deed to a lot of land in Houston, leaving a blank space for the insertion of the name of the grantee. The consideration expressed in the deed was $1500, and she was un-

willing to sell it for any less. This deed was delivered to an agent with power to sell the lot at the price expressed to any person who would give it, and Bammel, the purchaser, knew the facts. The agent and husband of Mrs. Cole agreed, without her knowledge, to accept $1000, and Bammel paid this sum to them and received the deed, and went into possession of the lot and improved it. The sale was reported to Mrs. Cole, and she at once repudiated it and refused to accept the purchase money which her husband tendered to her, but it did not appear that Bammel knew of her refusal to accept the money and ratify the sale as made. It was more than seven years before she sued for the land, or in any manner expressed her dissent to the sale. Our Supreme Court held, first, that the deed was a nullity and passed no title, and refused to allow for improvements made in good faith, but on motion for rehearing the original opinion was modified so as to allow Bammel to recover pay for permanent and valuable improvements, the court placing the ruling upon the ground that the defect in the title was one which she might waive, saying: "It would seem, however, that when the only defect in the title is in the power under which it was executed, and such as the true owner could waive by parol or acts done in pais, any conduct of the latter which led the possessor to believe that such waiver had taken place or would occur, or that the owner had acquiesced in his possession and improvements of the land, would constitute him a possessor in good faith."

A married woman's deed defectively acknowledged is often spoken of as void, and yet one purchasing under it may claim improvements made in good faith. Id., 117, citing Hill v. Spear, 48 Texas, 583; Berry v. Donley, 26 Texas, 737.

We think this case might be decided on the principle enunciated in the Bammel case, supra, for the long acquiescence of the county while vendees and subvendees were purchasing the land and paying round prices under general warranty deeds and holding actual possession and using and improving the same and paying taxes thereon might well have led this cattle company and its vendors, remote and immediate, to believe that the Commissioners Court of Dallas County had or would restore to the permanent school fund out of the county's general funds the amount for which the lands were sold, with interest, etc., and this, in our opinion, would have cured the defect in the title. Therefore neither the vendee Brown nor any person holding under him was bound to repudiate the contract and sue the county on the claim for services, nor was he nor any of his vendees, remote or immediate, bound to anticipate that Dallas County would repudiate the sale, rather than cure the defect by restoring the diverted trust funds. Limitation, therefore, in our opinion, did not begin to run against the Brown claim until the county brought this suit, which was the first act of repudiation of the contract and effort towards eviction. (Cassin v. La Salle County, supra; Eustis v. Fosdick, 88 Texas, 615; Jones v. Paul, 59 Texas, 46); and it would be inequitable and unjust, in our opinion, to allow the county to

repudiate its honest obligations and recover the property conveyed in discharge thereof, as in this case, without compelling it at the same time to restore the consideration paid to it in good faith, after more than twenty-one years' silent acquiescence therein, and after the lands have greatly enhanced in value and have passed into the hands of third persons for a full and valuable consideration.

It was not necessary that Brown's claim for his services should be presented to the Commissioners Court for allowance; that court had, in effect, allowed it once and sought to pay it by conveying the land sued for to Brown; besides, our Supreme Court said in a similar case: "As the county in this case seeks affirmative relief—the cancellation of its own voluntary deed—we do not think the rule contended for by appellee applies, which requires certain claims against the county to be first allowed and approved before payment is made." Tomlinson v. Hopkins County, supra.

We think the court also erred in rendering judgment in favor of the county for rents, except from the date of filing the suit. The defendant cattle company was not a trespasser upon the lands, but was in possession of the same holding under a deed from Dallas County purporting to convey the fee simple title with covenants of general warranty. Under such circumstances the relation of landlord and tenant can not be implied until the true owner repudiates the deed and demands possession, and that was not done in this case until this suit was filed. Brown v. Randolph, 2 Texas Ct. Rep., 635, 62 S. W. Rep., 981; 2 Warv. on Vend., pp. 888, 890.

For the errors pointed out the judgment must be reversed, and all the facts being before us, as found and concluded by the District Court, it becomes our duty to render here the judgment which the District Court should have rendered; that is, that Dallas County recover from the Club Land and Cattle Company the lands as sued for, and rents at the rate of 6¼ cents per acre per annum from the 13th day of June, 1900, the date this suit was filed, to the 5th day of March, 1901, the day of trial in the District Court, with interest thereon at the rate of 6 per cent per annum from March 5, 1901, until paid, and all its costs in the court below; that the Club Land and Cattle Company recover judgment against Dallas County for $533.60, being $500, the unpaid balance on the value of Brown's services rendered to the county and 6 per cent interest thereon from June 13, 1900, to the date of the judgment herein rendered in the District Court, together with interest on said sum at the rate of 6 per cent per annum from March 5, 1901, until paid; and that the Club Land and Cattle Company recover of Dallas County all costs which it has incurred on this appeal; and said cattle company shall take nothing against the said Bishop, neither personally nor as administrator, but he shall go hence without day and recover his costs in both capacities incurred against the said cattle company.

*Reversed and rendered.*

Writ of error granted by the Supreme Court, and the rulings of the Court of Civil Appeals herein affirmed, except as to the liability of Dallas County for the value of the agent's services, the claim for which is finally held to be barred by limitations. See 95 Texas, 200.