## A. N. McHay v. Charles J. Peterson et al.

### Decided November 2, 1908.

**1.—Trial—Burden of Proof—Charge.**

In an action for the possession of certain promissory notes the title to which was claimed by the plaintiff, the defendant alleged that the assignment of the notes to the plaintiff was obtained by fraud and undue influence and that the assignor was mentally incapable of making the assignment; the court charged the jury, in effect, that if they believed from the evidence that the assignor was so affected by disease or age as to make it difficult for her to exert her will freely and assert her true intention against the wishes of those to whose influence she was subjected, then and in such case the burden of proof was upon the plaintiff to show that the assignment to him was fairly obtained and without undue influence. Held, error. The plaintiff made his case when he proved the execution of the assignment and the delivery of the notes to him. The burden was on the defendant to prove the assignment void.

**2.—Contract—Mental Incapacity—Charge.**

In an action to recover the possession of certain promissory notes which the payee had transferred to the plaintiff, the defense being that the transfer was void because of undue influence on the part of the plaintiff and the want of mental capacity to contract on the part of the payee, charge of the court considered, and held to so marshal and present the facts upon which the defendants relied, at such length and in such manner and in such graphic array and persuasive form, as to give too much emphasis to said facts, and to constitute reversible error.

**3.—Same—Undue Influence—Self-serving Declaration.**

Upon the issue of undue influence of a son upon his mother in the making of a contract, testimony of a daughter as to what she said to her mother, considered, and held incompetent because self-serving.

**4.—Pleading—Irrelevant Issue.**

Upon the issue of undue influence exercised by a son over his mother, testimony as to the disposition of one of the daughters, in respect of gentleness, kindness and unselfishness, was irrelevant and immaterial, the disposition of the daughter not being an issue in the case.

Error from the District Court of Jefferson County. Tried below before Hon. W. E. Miller.

*L. B. Moody* and *Fleming & Fleming,* for plaintiff in error.

*Hugh Jackson, Chas. W. Abbott* and *A. D. Lipscomb,* for defendants in error.

McMEANS, Associate Justice.—This suit was brought by A. N. McKay, plaintiff in error, against Charles J. Peterson, defendant in error, to recover the possession of two promissory notes alleged to be the property of the former and in the possession of the latter. Plaintiff al-

leged the execution and delivery by Tillie A. Waterman and her husband, W. H. Waterman, to Christine Peterson, of a promissory note for $2,000, and also the execution and delivery of a note for $2,000 by Ella D. Pivito and her husband, M. E. Pivito, to the said Christine Peterson, both of which notes were secured by mortgages; the assignment of said notes by Christine Peterson to Peter W. Peterson, and the assignment of same by Peter W. Peterson to plaintiff.

Defendant answered, alleging that on October 16, 1902, the date of the assignment to Peter W. Peterson, Christine Peterson was of unsound mind and incapable of contracting, and further that "If it should appear that any form of apparent transfer of the notes sued for was obtained by Peter W. Peterson from Christine Peterson, for any purpose whatever, then defendant avers and would show to the court that same' was obtained by fraud, and by duress and undue influence, in that about October 16, 1902, and for four weeks prior thereto, and up to the time of her death on October 19, 1902, the said Christine Peterson was secluded in the house of the said Peter W. Peterson near Vermillion, South Dakota, by him and the other members of his family and household, who were all acting with him for the common purpose of obtaining by deception and extortion, and by undue and overbearing persuasion, from said Christine Peterson, such testamentary or like disposition of her property in contemplation of her approaching death as would give the said Peter W. Peterson a portion thereof greater than he would have received by her voluntary disposition; to this end the said Peter W. Peterson, who is masterful and overbearing in character, and his said accomplices, excluded from access to his said mother all of her other children, who were then within such a distance as to have enabled them to have visited her, and withheld from all of them information as to her true condition up to her death, and admitted none to see her except those who were indifferent, or those who were conspiring with him for the said purpose; that said Peter W. Peterson falsely insinuated to his mother that she had been cheated and defrauded in the sale of her interest in certain Texas lands to five of her children, and awed and intimidated her with threats of placing her under guardianship as incompetent, and deprived her of the advice and consolation of her other children, which she greatly needed, and while thus subdued and under his exclusive influence persuaded her that, unless some special provision was made for him he, under the laws of Texas, would be cut off from an equal share with the other children of the paternal and maternal inheritance, whom he falsely represented as intending such course; moreover, the said Christine Peterson had long been partly deaf, and was illiterate, and had lost her memory, and all of her faculties were so impaired as to render her incapable of the ordinary means of communication with others in respect of business matters on October 16, 1902.

"If the said Peter W. Peterson on said date obtained any apparent consent to or acquiescence in any form of transfer to himself of said instruments, it was such as resulted from her physical and mental impairment, as aforesaid, and from said fraud and from undue influence, as above alleged, and not from the true consent of said Christine Peterson, and that only such persons were present at the time thereof as were so conspiring, as aforesaid, with said Peter W. Peterson.

"That the two notes in controversy constitute about 4-11 of all the property of the said Christine Peterson which she owned on and prior to October 16, 1902, and at the time of her death; that the said Christine Peterson had five children besides the said Peter W. Peterson and this defendant, and that her affection for all of them was such as to render it her true will that all of her children should share equally in her estate after her death; that there was no valuable consideration for the transfer of the said notes to Peter W. Peterson, and that the said Peter W. Peterson is a man about ten times the wealth of his said mother, while she had several children who had no property or wealth whatever.

"That if there was any apparent transfer from Peter W. Peterson to plaintiff of his claim upon the said notes, the same was made with the purpose of obtaining to said Peter W. Peterson the benefits of the chances of litigating the claim of the said Peter W. Peterson herein set up as belonging to plaintiff, without affording this court the means of adjusting all the equities between the parties in respect of other undue advantages obtained by said Peter W. Peterson in the disposition of his mother's estate by acts done or apparently done on the 16th day of October, 1902; and defendant says that this court ought not to entertain plaintiff's suit unless the said Peter W. Peterson will come in and subject himself to the jurisdiction of this court in order that the equities may be adjusted in respect of the subject matter and other property of the estate of the said Christine Peterson.

"The defendant says he holds the notes sued for for the benefit of himself and the other children of the said Christine Peterson, deceased, who each own a 1-7 undivided interest therein, which interest he is ready and willing to pay over to each of the said children out of the proceeds to be collected on the said notes; or the defendant is ready and willing to surrender the said notes to any proper representative of the estate of the said Christine Peterson, who will show a better right thereto than defendant has."

Christine Maurer and her husband, E. H. Maurer, Tillie A. Waterman and husband, W. H. Waterman, Mary Swanson and her husband, Gus Swanson, Ella D. Pivito and her husband, M. E. Pivito, and Frank H. Peterson intervened as parties defendant, and for their answer adopted the allegations contained in the answer of Charles J. Peterson.

The case was tried before a jury which rendered a verdict in favor of defendants, upon which judgment for them was duly entered. The plaintiff in error's motion for new trial having been overruled, he perfected this appeal.

The evidence was uncontradicted that Peter W. Peterson, and all the defendants except E. H. Maurer, W. H. Waterman, Gus Swanson and M. E. Pivito, were the children and heirs-at-law of Christine Peterson; that the said Christine Peterson, prior to her death, which occurred on October 19, 1902, had lived in the home of her son Peter W. Peterson for a considerable length of time; that for some time before her death she suffered with, and died from, the effects of cancer, and that from the ravages of the disease great physical weakness resulted; that three days before her death she assigned the notes and mortgages sued for to

Peter W. Peterson, and that he thereafter assigned the same to the plaintiff in error.

The evidence was not sufficient to raise the issue of unsoundness of Mrs. Peterson's mind at the time she executed the assignments, unless the statement made by Peter W. Peterson to his brother Charley, in a letter written in December, 1901, that his mother was "a little feeble-minded," and the testimony of a physician who had never seen or attended Mrs. Peterson, who, in answer to a hypothetical question, stated that the judgment of a woman of the age and condition of Mrs. Peterson at the time she executed the assignments would be very much impaired and very easily influenced, and if she was weak-minded as early as the first part of the year 1901, her case would be diagnosed as a case of senile insanity, was sufficient to raise that issue. On the question of undue influence exercised by Peter over his mother to induce her to execute the assignments, the testimony offered by defendant, if admissible, was sufficient to raise that issue.

By his first assignment of error the appellant complains of the action of the court in giving the following special charge requested by the defendants:

"If you believe from a preponderance of the evidence that on the 16th day of October, 1902, Christine Peterson's mind was affected as the result of disease and age, or disease alone, so as to render it difficult for her to exert her will freely and assert her true intentions against the wishes of those to whose influence she was subjected, then you are instructed that the burden of proof is on the plaintiff to show by a preponderance of the evidence that the advantage obtained by Peter W. Peterson over her other children in procuring the assignments in question was fairly obtained, and without undue influence."

The burden of proof was upon the plaintiff to make out his case as alleged, and upon his making proof of the existence of the notes and mortgages, and the execution and delivery of the assignments pleaded by him, the burden was discharged. If then the defendants desired to avoid the force and effect of the assignments as alleged and proved by plaintiff, it was incumbent upon them to allege and prove such facts as would defeat plaintiff's right of recovery; and this they attempted to do by charging and offering proof to show that the assignments were void because Christine Peterson's mind at the time she signed them was so impaired as to render her incapable of contracting, and that the assignments were obtained by Peter W. Peterson by fraud and duress and undue influence exercised by him over her. This is in accord with the familiar principle that the burden rests upon the party who has the affirmative of the issue. While the weight of the evidence may have shifted from side to side, according to the nature and strength of the proof offered in support or denial of the defense pleaded, the burden still rested upon them to prove the facts alleged by them upon which they sought to defeat plaintiff's cause of action. (Clark v. Hills, 67 Texas, 148; Howell v. Hanrick, 88 Texas, 394; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 159; 2 Ency. of Ev., 794.)

By the fourth paragraph of the charge the court instructed the jury as follows:

"Now, bearing in mind the foregoing definition of undue influence,

if you believe from a preponderance of the evidence before you that Peter W. Peterson secluded his said mother in his home, excluded from her presence her children who were in such distance as to have visited her, and denied her an opportunity to consult them about the disposition of her property, and, while thus secluded and while she was so mentally and physically impaired, or either, as alleged in defendants' answer, if you believe from a preponderance of the evidence that she was so impaired, awed, intimidated, or coerced, as alleged in defendants' answer, and by undue influence, as that term has been hereinbefore defined, procured from her the assignments or transfers of the mortgage and notes described in plaintiff's petition, and but for such undue influence, if you believe from the evidence that such influence existed and was exerted to procure said assignments or transfers, the same would not have been made, you will find for the defendant and interveners, and so say by your verdict."

"Or, if you believe from a preponderance of the evidence before you that the said Peter W. Peterson secluded his said mother, as alleged in defendants' answer, and excluded her other children in the vicinity from her presence, and while thus secluded falsely insinuated to his said mother that she had been cheated and defrauded of her interest in certain Texas lands by five of her children, or awed and intimidated her by threats of placing her under guardianship as incompetent, or deceitfully persuaded her that, unless some special provision was made for him, under the laws of Texas he would be cut off from an equal share with the other children in the paternal and maternal inheritance, and falsely represented to her that his brothers and sisters were intending said course, and that his said mother was coerced by said threats, or relied upon said representations or insinuations, or any of them, and by reason of the aforesaid means, or any of them, was induced to execute said transfers or assignments of said notes and mortgages, and but for said means, or some of them, would not have so executed said assignments or transfers, you will find for the defendant and interveners, and so say by your verdict."

In this charge it seems that all facts and circumstances that go to sustain appellees' case are marshaled in consecutive form, and presents the facts upon which they relied at such length, and in such manner, and in such graphic array and persuasive form as to give too much emphasis to the particular circumstances referred to. In giving the charge we think the court was in error, and the fourth and fifth assignments raising the point are sustained. (New York & Texas Land Co. v. Gardner, 25 S. W., 739; Galveston, H. & S. A. Ry. v. Kutac, 76 Texas, 478; Medlin v. Wilkins, 60 Texas, 415; St. Louis, A. & T. Ry. v. Taylor, 5 Texas Civ. App., 671; McKeen v. James, 23 S. W., 463.)

The sixth assignment assails the following portion of the court's general charge, the complaint being that it is a charge upon the weight of the evidence and gives undue prominence to the evidence concerning the mental and physical condition of Christine Peterson: "In passing upon the issues of undue influence or fraud, as these issues have hereinbefore been submitted to you, you should take into consideration the mental and physical condition of the said Christine Peterson at the time she executed the same, in determining whether or not said influence was

exerted and said fraud practiced, or either of them, to procure the assignments in question." The assignment is sustained. (Galveston, H. & S. A. Ry. v. Kutac, 76 Texas, 478; Kerchner v. Latimer, 64 S. W., 237.)

There was much evidence introduced on the trial bearing upon the question of undue influence exercised by Peter W. Peterson over his mother, consisting of statements made by Mrs. Peterson in that regard to the witnesses. Among other things the witness, Mrs. Maurer, testified that Mrs. Peterson told her that Peter had said he would have a guardian appointed for her, and intended to send her away to be operated on, and that she was afraid he would have these things done. The witness testified that when Mrs. Peterson told her that she replied: "Don't be afraid; I will do all I can to protect you. I have engaged a lawyer to see that he does not put you under guardianship, and you shall not be sent away to be operated upon, as Dr. Colisi—your doctor—has promised me that he will let me know if Peter makes that kind of a move." Timely and proper objection was made to the introduction in evidence of what the witness said to her mother, and the objection was overruled, and this action of the court is made the basis of appellant's tenth assignment of error. The testimony was incompetent and the assignment must be sustained.

By his thirteenth assignment appellant complains of the action of the court in permitting several witnesses to testify to the character of Mrs. Waterman, a daughter of Christine Peterson and one of the defendants, for gentleness, kindness and unselfishness, over the objection that the testimony was irrelevant and immaterial. The character of Mrs. Waterman was not in issue in the case, and under the issues raised by the pleadings and evidence the materiality and relevancy of the testimony is not perceived. The assignment is sustained.

The other assignments not herein referred to present no reversible error and are overruled.

For the errors indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*