## FIRST NAT. BANK OF GARNER, IOWA, v. SMITH. (No. 910.)*

(Court of Civil Appeals of Texas. Amarillo. Feb. 2, 1916. Rehearing Denied March 1, 1916.)

1. BILLS AND NOTES ☞537—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action on a note, the question whether plaintiff acquired it before maturity for value without notice *held* for the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862-1893; Dec. Dig. ☞537.]

2. TRIAL ☞244(3)—INSTRUCTIONS—SINGLING OUT FACTS.

In an action on a note plaintiff claimed to have acquired for value without notice before maturity, which was given for the purchase price of silos sold in February, and was subsequently listed with plaintiff as part of the collateral to secure a debt of the seller, the court should not, though the note bore the date April 15th, have submitted to the jury the question whether the note was, as claimed, pledged to plaintiff on April 16th; for, if plaintiff obtained possession of the note at any time before maturity, it was a holder in due course, and, though the seller of the silos might not have had possession of the instrument, it might, knowing it was to be received, have listed it on April 16th, and so the submission of such issue was improper, giving undue prominence to particular facts.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 579; Dec. Dig. ☞244(3).]

3. APPEAL AND ERROR ☞262—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, declaring that the giving, refusing, or qualifying of instructions shall be regarded as approved, unless duly excepted to, appellant cannot complain of the refusal of a special issue which it tendered, where no exceptions were taken below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1582-1589, 1593-1595; Dec. Dig. 262.]

4. EVIDENCE ☞441—PAROL EVIDENCE RULE—ADMISSIBILITY.

Where a contract for the sale of silos provided that it should contain all of the agreements between the parties, a purchaser cannot, without any pleading or proof of fraud or misrepresentations made in inducing the contract, prove a contemporaneous parol agreement varying the written instrument; for that would permit the varying of a written instrument by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723-1763, 1785-1845, 2030-2047; Dec. Dig. ☞441.]

5. PRINCIPAL AND AGENT ☞104—REPRESENTATIONS BY AGENT—AUTHORITY.

Where a sales agent had no authority to make warranties other than those contained in the written contract signed by the purchaser, which declared that it should contain all of the agreements between the parties, a parol warranty by the sales agent is not binding unless ratified by the seller.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 294-297; Dec. Dig. ☞ 104.]

6. APPEAL AND ERROR ☞877—PERSONS ENTITLED TO ALLEGE ERROR.

In an action on a note for the purchase price of a silo brought by a bank to which it had been negotiated, the bank, having been defeated, cannot on appeal complain that judgment was in favor of the buyer against the impleaded seller; the seller not complaining.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560-3572; Dec. Dig. ☞877.]

7. BILLS AND NOTES ☞497—ACTIONS—BONA FIDE PURCHASER.

One claiming to be a bona fide holder of a note has the burden of showing that it acquired the note before maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675-1681, 1683-1687; Dec. Dig. ☞497.]

8. BILLS AND NOTES ☞496—ACTIONS—PRESUMPTIONS.

As under Rev. St. 1911, art. 588, the validity of an indorsement of a note cannot be attacked unless it is specially questioned in the pleadings, there is a presumption that an indorsement in blank was made before maturity, and the holder is presumed to be the owner.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1665½, 1669-1674; Dec. Dig. ☞496.]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by the First National Bank of Garner, Iowa, against Morton J. Smith, who filed a cross-petition and attached the property of the Des Moines Silo Manufacturing Company. From a judgment for defendant against plaintiff and the impleaded defendant, plaintiff appeals. Reversed and remanded, save as to judgment against impleaded defendant.

Ferguson & Puckett, of Lubbock, for appellant. W. F. Schenck, of Lubbock, for appellee.

HUFF, C. J. The appellant bank sued appellee, Smith, on a note dated April 15, 1913, due February 1, 1914, for the sum of $1,094, payable to the order of the Des Moines Silo Manufacturing Company, with interest from date at the rate of 8 per cent. per annum, and alleging that the payee therein, Des Moines Silo Manufacturing Company, indorsed and transferred the same to appellant before maturity for valuable consideration, in due course of business.

The appellee answered, in effect, that appellant was not the owner and holder of the note before maturity for value without notice of the equities of appellee, defeating the consideration of the note, or a purchaser in

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

good faith in due course of trade. He also alleged, in effect, that one J. F. Burrows, as agent for the Des Moines Silo Manufacturing Company, about February 2, 1913, contracted to sell to appellee two silos to be delivered May 1, 1913, freight prepaid to Lubbock, Tex., at which time appellee— "executed some sort of a written or printed contract in keeping with the terms and agreements made with reference to the sale and purchase of said silos, and that it was agreed at the time and in said contract a warranty or guaranty should be in writing, which this cross-complainant [appellee] alleges was written therein; that the silos so purchased and delivered, or to be delivered, should be put up by said Morton J. Smith at his own expense, and they should be paid for within nine months after such delivery, provided said silos stood the weather and wind of the plains country, and particularly of Lubbock county, Tex., and did not fall down or shrink to where they could not be used, and further provided said silos each and both stood up against the wind and windstorms in said Lubbock county, Tex., thereby guaranteeing that said silos would not fall down nor shrink and become loose so that they would not fall down, and that they would not blow down by any windstorm."

He further alleged, in effect, after the execution of the written contract appellee heard that this particular make of silos would not stand the winds of that country, and, having determined to cancel the contract or order, as he had the right to do, at any time before Burrows left town, he informed Burrows of his purpose; whereupon Burrows informed the appellee that he had full authority to make any trade he saw fit for the manufacturing company, and again warranted and guaranteed that the silos would stand up as above set out; that, should they blow down, the contract should be canceled, and the note given therefor should be canceled and null and void, and that appellee would not be compelled to pay for either one or both of the silos; that the salesman or agent also agreed to lay down the silos f. o. b. cars Lubbock for $1,094, no part of which was to be paid until they had been tested nine months or more. No part nor all the money was to be paid unless each silo came up to the requirements. He also alleged at length that the silos arrived April 24, 1913, and that the company gave instructions to one Penny, its local agent, to collect from appellee the freight, which he refused to pay; that he then informed Penny of his contract which he had made with Burrows, substantially as above set out, and that Penny wired in full his claim to the silo company; that appellee set up the silos after they had been delivered to him, and they afterwards fell to staves or blew down, etc.; that after the silos were delivered to him he signed the note sued on, dated April 15, 1913, under the agreement above set out, upon the condition that, if the silos fell down, etc., he should not be liable on the note. He also alleges damages to his crop harvested to go into the silos by reason of the fact that they fell down, and seeks to make the silo company a

party to the cross-petition and to obtain judgment for the amount sued for against it.

Upon special issues and the answers of the jury thereto the trial court entered judgment against appellant and the silo company and rendered judgment against the silo company for $600, foreclosing an attachment lien on the silos.

The first assignment is to the effect that the court erred in not setting aside the findings of the jury, especially the sixth finding; and the fifth assignment is that the court was in error in submitting to the jury the fifth issue, which is as follows:

"Did the First National Bank of Garner, Iowa, acquire the note sued on from the Des Moines Silo Manufacturing Company on April 16, 1913?"

The jury answered this question: "No."

The sixth issue submitted is as follows:

"If you have answered the last issue in the affirmative, then you need not answer this issue, but, if you answered it in the negative, then you ascertain and state in answer thereto what time, if at all, said plaintiff bank acquired said note."

The jury answered: "Not at all."

[1] Appellant asserts under the first assignment that there was no evidence to support the sixth issue submitted to the jury. The facts relied on by appellee to show there was no acquisition of the note before maturity are circumstantial in their nature, and, we believe, sufficient to support a finding by the jury. Bolt v. Bank, 145 S. W. 707; Jones v. Bank, 160 S. W. 126; Bank v. Ricketts, 152 S. W. 646; s. c., 177 S. W. 528. The testimony of the bank officers is that they acquired this note with other collaterals, which were deposited as collateral security to the company's note given to the bank for $6,000 on April 16, 1913, and that the note in question was acquired April 16, 1913. The note bears date April 15, 1913, but there is testimony that it was not delivered until April 24, 1913. The order for the silos, agreeing to give a note for the price of the silos, was dated February 2, 1913, and forwarded to the company. There are letters in the record showing that the bank was the holder of the note before maturity, notifying appellant to that effect; several witnesses testifying for the bank that the note was held as collateral security; in fact, the silo company notified appellee it would dispose of the note, and that it, in effect, had been sold before maturity. There are several circumstances which the appellee relied on to show that the claim made by appellant was and is fictitious, and not bona fide. We shall not set them out in detail.

[2, 3] Special complaint is made of the submission of issue No. 5 because it required the jury to find that the transfer was made on April 16, 1913. We do not think the court should single out in its charge a specific date, requiring the jury to ascertain whether or not the acquisition of the note was had at that time. The issue in this case was whether the note was acquired before maturity.

The facts may have authorized the finding that the witnesses who gave the date of its acquisition were in error as to the time, and only gave that date as approximate, or that it was in fact then simply listed as one of the collaterals. The silo company knew that the contract had been accepted and the amount for which the note should be given, and, while there was no actual or manual delivery of the note, it could and would be delivered, and that the witness simply referred to the time of listing the collaterals with the bank. The jury should have been left free on this point without the issue suggested by the court that a finding of acquisition on that day was in any way essential. Bell v. Hutchings, 41 S. W. 200; Ry. Co. v. Green, 49 S. W. 672; McHay v. Peterson, 52 Tex. Civ. App. 195, 113 S. W. 981; Railway v. Gilmore, 62 Tex. 391. However, a finding that it was not on that day delivered to appellant would not defeat a recovery, yet the jury may have concluded, if not then delivered, it was, in fact, never acquired under the peculiar facts of this case. Under the holdings of the courts on the submission of a case upon special issue, this issue and finding might be treated as immaterial. It is, however, a singling out of a fact which the appellee contends in this court, and doubtless did in the court below, as showing appellant never, in fact, became the holder of the note before maturity. Emphasis should not have been given to such a fact by the court in the submission of the issues, especially when it is not such as will defeat a recovery. While we think this issue as submitted error, yet, in the light of the sixth issue above quoted and the jury's finding, perhaps no injury is shown such as will require a reversal. We believe the issue requested by the appellant set up under the sixth assignment was the proper issue to have been submitted, and was the issue in the case, but the appellant did not except in the court below to the refusal of that issue and take his bill of exceptions thereto. We cannot therefore consider it. Article 2061, Vernon's Sayles' Civil Statutes.

[4] The sixth assignment is to the effect that the trial court erred in admitting the parol evidence of appellee to contradict the written contract for the purchase of the silos. On February 2, 1913, the appellee made an order for the silos through the agent or salesman of the Des Moines Silo Manufacturing Company, which was forwarded to the silo company at that place, and who accepted the order and shipped out the silos. The following is the order:

"Lubbock, Texas, Feb. 2, 1913.

"Des Moines Silo Mfg. Co., Des Moines, Iowa: Please ship to me at Lubbock, Texas, on or before May 1st, or at your earliest convenience, goods specified below, which I will receive and pay for at the prices, terms and delivery as stated below, under each head:

| Articles. | Price. |
| --- | --- |
| 2 18 x 361 Pience Fir Silo | $1,000.00 |
| 2 Roofs | 94.00 |

"Terms, cash on note on delivery. Note for nine months at eight per cent. Delivery f.

o. b. Lubbock, Texas. Bill of lading for the shipment and settlement papers to be sent to Lubbock State Bank, where settlement is to be made at the time of delivery, according to the above price, terms, and delivery. Failure to make settlement as above specified releases the Des Moines Silo Mfg. Co. from all responsibility, and makes the entire amount due, and this order cannot be countermanded either before or after acceptance. Title to goods ordered hereby and right to reclaim possession thereof for balance of purchase price shall remain in the Des Moines Silo Mfg. Co. until paid for in money, and in case of suit thereon reasonable attorneys' fees for vendor's attorneys may be taxed as part of the costs. This order is not binding on the Des Moines Silo Mfg. Co., unless accepted by them at their office in Des Moines, Iowa, and after acceptance I, or we, agree to hold them blameless for failure to deliver from causes beyond their control. In case of violation of this contract, it is agreed that twenty-five per cent. of the purchase price shall be taken as stipulated damages for said violation. It is understood that this order constitutes the entire and only agreement between the parties hereto and any and all verbal agreements made with the salesmen or agents that are not written on the order are waived by purchaser. If this order is for ensilage cutter, it is so subject to the manufacturer's guaranty as printed in catalogue.

"[Signed] Morton J. Smith.
"F. J. Burrows, Salesman.
"R. T. Penney, Agent.

"Accepted: Des Moines Silo Mfg. Company. March 8, 1913."

The appellee testified:

"After signing this written contract, I had a different agreement from what this writing expresses which was made with Mr. Burrows. The first agreement that these things were to be shipped here and me pay nothing on it. I was to take them out there and put them down, and he would guarantee them to stay on the ground for nine months, put them up under the contract like he wanted me to, and it would not cost me anything, but when they were shipped here he wanted to pay $221 freight. I talked to Penny. He joined in as agent for Burrows and wanted me to pay the freight, and I told him I would not take these silos. I said: 'You wire to Burrows and ask him about the contract. I will follow that contract.' He wired there, and they wired back and said: 'Let Smith have those silos like he wants them.' I had a strict understanding with Burrows before witnesses there. I took him down and introduced him to a man and let them make an agreement as to how to put them up. I offered to pay him for an expert to put them up, but he said he would be satisfied with a first-class carpenter. * * * It was guaranteed to me for nine months, to be put up after I got it, and set there a while empty, and then fill it, and then stay there nine months. I told him I would be satisfied. The agent told me my note was here in the bank, and if it blowed down he would allow us for putting them and hauling them there. I asked him what kind of right he had to make that kind of deal. He said he was state agent, and had an interest in the company. All of this took place after I signed the written contract. The verbal contract was made after I signed the written contract. It was its final closing up. I think it was ten days—something like that. I think he wired there to have these things shipped, or wrote immediately, and in about ten days these silos came in. I took them out under the telegram which has been read. I would not have moved them under the statement to pay the freight down. I did not agree to that. I took them out under the verbal agreement. I refused to be bound by that written agreement. I would not even touch it."

The witness, while testifying, was handed the written order above set out, and admitted that the signature to the paper was his and that he signed it, and admitted that Mr. Burrows had the paper there when they closed the deal, and that he showed it to him and he signed it.

The appellant objected to the oral testimony:

"First, because the original contract is in court, and it is better evidence than parol testimony; and, second, because it is to impeach the written contract by showing conditions and provisions that are not contained in the writing; and, third, because there is no pleading by the defendant to warrant the introduction of any kind of evidence, and particularly parol evidence, but to impeach or contradict either the contract for the sale of the silos or the note that was given for them which has been introduced."

The allegation of the appellee is: First, an alleged contemporaneous parol agreement; the second is that he had the right to countermand the order before Burrows, who sold to him the silos, left town, and that he (Burrows) again "stated that he would write into the contract the warranty guaranty that he was then making, and that he had previously made." The third is contained in the fourteenth paragraph of the answer, which simply amounts to an allegation that he was not to pay the freight, and that he told one Penny, who was the local agent, what the warranty agreed upon was, and that Penny understood the conditions and wired such conditions, "or gave said company such notice as he saw fit," and delivered the two silos to appellee. The telegrams referred to by appellee in his testimony are, in effect, an instruction to Penny from the silo company that the appellee refused to pay the freight, $221.20. The company by wire instructed Penny to pay the freight and draw on the company for the amount. There is no evidence that he ever wired or instructed the company that there was any such warranty as claimed in this case. The note sued on in this case is a plain promissory note, without any other conditions.

The effect of the testimony given by appellee was to ingraft a parol contemporaneous agreement upon a written contract. The pleadings and evidence amount to the fact that an agreement was made, but left out of the writing, and that the appellee knew that fact. We find no allegation of fraud or mistake alleged, which caused the omission. We think this testimony contradicts the written contract, and under the state of the pleading it was error to admit it. Phelps v. Parker, 30 S. W. 365; Aultman v. York, 1 Tex. Civ. App. 484, 20 S. W. 851; Case v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; Seitz v. Brewers, 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837.

Appellee did not allege a case of fraudulent representation inducing a contract occasioned by representation of facts outside the purported agreements as in Commonwealth v. Bomar, 169 S. W. 1060. The representations

in that case were that the company had $200,000 paid up capital in cash, when, in fact, it had less than $20,000, thereby inducing Bomar to subscribe for stock. Or like the U. S. Gypsum Co. v. Shields, 106 S. W. 725, afterwards affirmed by the Supreme Court. To induce the order in that case, the agent represented that the government contractors would use their products in constructing government buildings at Ft. Sam Houston. These were representations of facts outside the order, and were not part of it, but inducements to it. The agreement here sought to be shown by parol is part of the agreement alleged not to have been placed in the writing, and contradicts the terms of the original contract. This we understand is not permissible. The order, when accepted by the company, imports by its terms a complete and legal obligation. It, in fact, asserts:

"It is understood that this order constitutes the entire and only agreement between the parties hereto, and any and all verbal agreements made with the salesmen or agents that are not written on the order are waived by the purchaser."

With this stipulation the appellee sent the order to the silo company, and on the faith of this order the goods were shipped. To admit the testimony to prove this parol contract and add to or vary the written contract would be to violate a cardinal rule of evidence when there is no fraud, accident, or mistake alleged in omitting the warranty so to be ingrafted. This assignment, we believe, should be sustained.

For the same reasons, we will sustain the third and fourth assignments.

[5] We also believe under the facts of this case the trial court should have submitted the special issues requested by the appellant set out under the seventh assignment of error. It occurs to us, if there was no authority to make such a warranty by the agent or salesman, and if he made it, the principal should not be bound. Ordinarily the warranty given by the salesman authorized to sell may be presumed to have been upon the authority of his principal; but, when it is shown by evidence he had no such authority and the declaration of the purchaser, that the order constituted the entire agreement, and that all such representations, etc., not written in the order are waived, we think the principal would not be bound by such representations, unless after knowledge thereof the company ratified the warranties so made.

[6] The appellant bank attacks the verdict and judgment of the trial court in rendering a judgment on the cross-petition against the silo company for $600 damages. The silo company is not appealing. The judgment so rendered may be void, as suggested by appellant, for the reason that the silo company was a nonresident of the state. It may also be that the attachment upon an unliquidated demand would not authorize such service as

would support a judgment in rem against the property seized under the attachment; but, if so, it is a matter about which appellant is not concerned.

The tenth assignment is sustained. We see no issue presented in the pleadings which would render the letter introduced, dated January 16, 1914, admissible. It is simply a refusal to pay the note upon demand and contains a lot of self-serving declarations.

[7, 8] The trial court put the burden of proof on the appellant to show a transfer to it and to show when it was transferred, if at all. The blank indorsement on the note proves the transfer unless the same is attacked as not being genuine or as being forged. The assignment of the note, when no such attack is made, is regarded as fully proved. In other words, as to the indorsement non est factum, in effect, must be pleaded. Article 588, Revised Civil Statutes; Schauer v. Beitel, 92 Tex. 601, 50 S. W. 931. The appellant was required to show only that it purchased the note before maturity. The charge of the court imposed the burden on appellants to establish the fifth and sixth special issues first above set out. The law presumes the indorsement was made before maturity, when the indorsement does not show otherwise, and the holder of a note indorsed is presumed to be the owner unless the indorsement is denied under oath or attacked under oath. This charge is not objected to by the appellant, but we thought it proper, inasmuch as the case is to be reserved, to refer to the matter. We call attention to the case of Daniel v. Spaeth, 168 S. W. 509, where this court expressed its views upon the matters last above mentioned.

The case will be reversed and remanded as to appellant, except that part of the judgment against the silo company, which is not appealing in this case.