**CASSEL v. WEST.**

No. 4637.

Court of Civil Appeals of Texas. Amarillo.

Sept. 28, 1936.

Rehearing Denied Nov. 16, 1936.

438

Nelson & Smith, of Tahoka, and E. L. Klett, of Lubbock, for appellant.

Tom Garrard, of Tahoka, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

MARTIN, Justice.

Appellee sued appellant for the balance due on notes and to foreclose his lien on 160 acres of land given to secure same. Appellant filed a cross-action to cancel a mineral lease on said land theretofore given appellee by appellant, alleging certain fraudulent promises to develop same, and for damages. Such cross-action is all that is properly involved here.

Judgment was for appellee and against appellant upon his cross-action.

The general nature of the case, as well as the legal questions involved, are fairly well illustrated by the following special issues submitted to the jury:

"Special Issue No. 1. Do you find from a preponderance of the evidence that E. E. West, before he procured the lease from V. S. Cassel, represented to V. S. Cassel that he would develop the mineral lease in controversy?

"Special Issue No. 2. Do you find from a preponderance of the evidence that said representations, if any, were falsely made?

"Special Issue No. 3. Do you find from a preponderance of the evidence that said representations, if any, were made by E. E. West without the intention of performing them?

"Special Issue No. 4. Do you find from a preponderance of the evidence that V. S. Cassel was deceived by said representations?

"Special Issue No. 5. Do you find from a preponderance of the evidence that V. S. Cassel was induced by said representations, if any, to execute the mineral lease of date June 23, 1933?

"Special Issue No. 6. If you have found in answer to preceding issues that E. E. West did not intend to develop the mineral lease in controversy at the time the lease was executed, then do you find from a preponderance of the evidence that in February, 1934, at the time V. S. Cassel received $30.00 in lieu of royalty, that he had knowledge of the fact that the said E. E. West at the time of the execution of the lease did not intend to immediately develop the lease?

"Special Issue No. 7. If you have found in answer to preceding issues that E. E. West did not intend on June 23, 1933, to develop the mineral lease in controversy, then do you find from a preponderance of the evidence that V. S. Cassel had knowledge of such fact prior to August 8, 1934?

"Special Issue No. 8. In what amount, if any, do you find from a preponderance of the evidence was the value of the land in controversy, if any, by the removal of the property by the plaintiff, E. E. West?

"Plaintiff's Requested Special Issue No. 1. Do you find from the evidence that in October, 1933, at the time V. S. Cassel demanded and received $45.00 in lieu of royalty that he had knowledge of the fact that E. E. West at the time of the execution of the lease on June 23, 1933, did not

intend to immediately purchase and install sufficient machinery to work the lease?·

"Plaintiff's Requested Special Issue No. 2. Do you find from the evidence that in December, 1933, at the time V. S. Cassel received $30.00 in lieu of royalty that he had knowledge of the fact that E. E. West at the time of the execution of the lease on the 23rd of June, 1933, did not intend to immediately purchase and install sufficient machinery to work the lease?

"Plaintiff's Requested Special Issue No. 3. Do you find at the time V. S. Cassel attempted to cancel the lease in controversy by letter on or about the 8th day of August, 1934, that he had knowledge of the fact that E. E. West, at the time he received the lease, did not immediately intend to purchase and install sufficient machinery to work the lease?

The jury answered special issues Nos. 1, 5, 6, and 7, "Yes," but failed to answer the remaining issues.

We are of· the opinion that this case should be affirmed for the following three reasons:

1. The evidence conclusively shows that no fraudulent intent existed in the mind of appellee at and prior to the time of the signing of the mineral lease in question.

2. It conclusively appears that appellant was not deceived by the alleged fraudulent representations.

3. The jury found in effect, and the evidence overwhelmingly if not conclusively shows, that appellant waived the fraud alleged to have been practiced upon him by appellee.

These·reasons we now discuss in detail.

The appellee alleged, in part:

"* * * That the said E. E. West stated and represented to the said V. S. Cassel that if the said V. S. Cassel would make, execute and deliver the aforesaid mineral lease, he would develop said land and produce and market the aforesaid minerals, particularly silica, pumice and Fuller's earth. * * *

"That he would immediately purchase, install and operate sufficient machinery therefor."

Appellant testified in part:

"A. He said he would go into development immediately.

"Q. What did he say to you? A. He said as soon as we could get the things rounded up and get the lease and get the equipment on the land we would go to work at it, and he employed me and said he would put me on the payroll immediately as manager of construction and operation work.

"Q. Did he tell you about how much machinery it would take to develop it? A. He did' not know at that time.

"Q. But he told you he would put enough machinery there to produce the minerals and market them? A. Yes, sir."

The case was submitted upon the above special issues, as correctly presenting the respective theories of the parties as raised by the evidence without objection by appellant, but over the vigorous objection of appellee, who presented a request for a peremptory instruction, and other objections not necessary to here repeat.

■■ It will be noted that appellant's alleged fraud had its basis in promises to be performed in the future. There is a marked difference between fraud arising out of such promises and that based upon representations as to present or·pre-existing facts. Respecting the latter, scienter or intent to deceive are immaterial elements. Stowe v. Wooten (Tex.Civ.App.) 37 S.W.(2d) 1055, affirmed (Tex.Com. App.) 62 S.W.(2d) 67; 20 Tex.Jur. pp. 42 and 44. The rule as to the former is correctly stated, we think, as follows:

"Ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal· acceptation, though subsequently the promise is, without any excuse, entirely broken and nonfulfilled. This is a plain and well-established proposition, about which there can be no controversy; otherwise every breach of a contract would amount to fraud.

"In order for a promise to constitute fraud it is necessary that it should have been made with the intent at the time that it would not be performed, and with the intention, design and purpose of deceiving." 20 Tex.Jur. pp. 32 and 33, and numerous authorities there cited.

Fraud of this character must be such as carries with it moral turpitude or intentional wrong. Higginbotham-Bartlett Co. v. Powell (Tex.Civ.App.) 270 S.W. 193. See, also, Mid-Continent Life·Ins. Co. v. Pendleton (Tex.Civ.App.) 202 S.W. 769,

440

771; Zavala Land & Water Co. v. Tolbert (Tex.Civ.App.) 165 S.W. 28.

In this case, appellant approached appellee in the latter's hotel room to induce him to take the lease in question. Both were inexperienced in such matters, but of the two, appellant had a somewhat fuller knowledge of the subject dealt with. Appellee was an ordinary dentist in Abilene, and according to the testimony of his neighbors, an honorable and trustworthy man. They apparently reached an agreement and went to Abilene, where the contract was drawn. They then proceeded immediately together to buy, and did buy, machinery to start the development of such property. Appellant had charge of its installation. Several thousand dollars, perhaps about six thousand, was expended. Appellee took in a partner with whom he had a difference, resulting in a lawsuit and receivership. This it appears caused the development to cease. During this time appellant had been foreman in change of the installation of such machinery and the expenditure of appellee's money, and was intimately familiar with every step taken. About the time the development ceased, appellant demanded and received $15 per month royalty for the months of July, August, and September, 1933, although it appears such property was during such months being developed. This phase is more fully discussed hereafter. At the time such mineral lease was executed, the 160 acres of land it covered was incumbered for some $5,000 or $6,000. This indebtedness was matured and foreclosure suit brought by a third party. Appellee, to protect his investment, was compelled to and did purchase these notes. This indebtedness is that for which he secured judgment herein. To us this record presents conclusively the picture of a country dentist being carried off his feet by his enthusiasm, partly induced by a rosy picture presented to him of great riches from mineral to be mined and sold in the market. Incidentally, it appears that such minerals had a market of $10 per ton in New York City, but all parties apparently overlooked the fact that it would cost $11 per ton to market it at that point. This was too small an item for two embryonic, bubbling financiers to investigate before expending their time and money. This record teems with evidence that appellee intended to develop the property when the lease was made. He was a man of rather modest means, but spent something like a total of ten or twelve thousand dollars in the development of the property and the protection of his title. On August 8, 1934, appellant wrote appellee the following letter:

"Tahoka, Tex., Aug. 8, 1934.
"Dr. E. E. West,
"Abilene, Texas.
"Dear Sir:
"This is to notify you that I am this day canceling lease contract with you on North East quarter of Section 8, Block 8, E. L. & R. R. Company land in Lynn County, Texas, for the cause of none payment of rental on said contract.
"Respectfully,       V. S. Cassel."

On September 6th following, appellee filed suit.

We reproduce here two letters passing between the parties:

"Tahoka, Tex., Oct. 16, 1933.
"Dr. E. E. West,
"320 Mims Bldg.,
"Abilene, Texas.
"Dear Sir:
"You are hereby given notice that the minimum royalty of $15.00 per month due on the 23rd day of July, 1933, also the $15.00 minimum royalty due on the 23rd day of August, 1933, and also the $15.00 minimum royalty due on September 23rd, 1933, under the terms of your lease contract made and entered into with me on the 23d day of June, A. D. 1933, are all long past due and you are hereby given notice that if the same are not paid according to the terms of your said lease contract I shall declare said contract forfeited under the terms of said lease contract as is fully set out in section four thereof and this notice is intended to give you notice of my intention and that said minimum royalties are unpaid, as is provided in said lease contract.
"Please take due notice this the 16th day of October, A. D. 1933.
"V. S. Cassel."

"Abilene, Tex., Feb. 13, 1934.
"Mr. V. S. Cassel,
"Tahoka, Texas.
"Dear Sir:
"I enclose you cashier's check for $30.-00, being the amount claimed by you as rental on the mineral lease for the months of December, 1933, and January, 1934. This payment is made to you for the purpose of protecting my lease, although I want to call your attention to the fact that

I am not waiving anything by this payment, and claiming full title to this land as authorized by my contract and deed.

"Yours very truly,

"eew:ra

"Encl.

■ It appears that appellant had received in cash and credits on his notes continuous monthly rental payments, in lieu of development. Lack of space prevents a more detailed statement. We think proof of a fraudulent intent on the part of appellee is wholly lacking in the evidence.

■ It is, we think, elementary that a misrepresentee must show that he actually relied upon the alleged false statements, and that he had a right to rely upon same. It ought not to be necessary at this date to cite authorities for the plain proposition that there can be no fraud without deception; and there could be no deception where a party is not actually deceived. Here the parties entered into a written contract not questioned in any way by pleading or proof. It stands as the solemn agreement and the only agreement entered into by the parties here involved respecting the subject-matter of this suit. By its stipulations the parties, agreed:

"The lessee shall be under the obligation to develop said property and produce all minerals known to exist in commercial paying quantities upon said property, except that lessee may hold said lease without the obligation of development, upon the payment of $15.00 per month, in lieu of royalties, and upon failure to pay said minimum royalty of $15.00 per month, lessor shall have the right at his option, to forfeit this lease, after written notice to lessee and failure to pay for a period of 90 days. * * *

"All obligations of lessee hereunder, both express and implied are to be understood as covenants and not conditions or limitations; and save as hereinafter expressly provided, the breach of same shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for a cancellation hereof, in whole or in part."

There is not only a failure of both pleading and proof to show fraud, accident, or mistake in the insertion of the first clause above quoted, but it conclusively appears that appellant knew of its presence and vigorously insisted on its performance literally as written. Could it be that appellant relied upon an oral promise to immediately develop at the time he signed the mineral lease, when he pointedly at that time agreed in writing to postpone development in lieu of $15 per month in rentals? To so hold it seems to us would make a mockery of his contractual obligations. We are supported in this view by a case closely paralleling the present one in its facts. Lane v. Urbahn (Tex.Civ. App.) 246 S.W. 1070; Id.(Tex.Civ.App.) 265 S.W. 1063; Id.(Tex.Civ.App.) 289 S. W. 173, 178 (writ ref.).

■ Finally, we are of the opinion that the better reasoning supports the view that the jury's finding on special issue No. 6, supra, amounted in law to an answer that appellant had waived any fraud based upon promises to immediately develop and entitled him to judgment. If we assume that appellant had a right in opposition to his contractual obligation to insist upon immediate development, he waived such right after knowledge of no intention to immediately develop, by insisting upon and accepting payment of delay rentals as provided for in his lease. Otherwise expressed, if we write into the jury's verdict a favorable answer to all issues presenting appellant's theory, the actual finding in reply to special issue No. 6, and probably also issue No. 7, entitled appellee to a judgment under this record. It is argued by appellant that such issues were not in response to the pleadings and the answers not findings of ultimate facts. No objection whatever was lodged by appellant to the form of these issues. They followed substantially the pleadings and literally the evidence as shown by the foregoing quotations.

■ Appellee vigorously insisted upon a peremptory instruction and objected to the submission of the case to the jury. If the court erred in entering judgment when he did for appellee, such error was harmless, as in our opinion the evidence conclusively demanded such action by him when the evidence closed. It would seem to be exalting the shadow above the substance, to hold that the court lost such right by erroneously submitting the case to the jury. We believe that such right remained with the court at least until an unfavorable verdict against appellee was returned, and was not lost then if the proper procedure under the statute was followed. The verdict returned was favor-

able to appellee but incomplete. It we err in holding that appellee was entitled to a judgment on such verdict, we think the trial judge could still correct his former error and enter judgment as he did. So regardless of his action in this respect, we believe that an affirmance is required, because the judgment rendered was the only one that could have been legally entered under the pleading and evidence.

Judgment affirmed.