## BANKERS LIFE & LOAN ASS'N OF DALLAS. v. WOOD et al.*

### No. 13830.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 25, 1938.

Rehearing Denied Jan. 13, 1939.

J. Frank Wilson, of Dallas, and Fred H. Minor, of Denton, for appellant.

Geo. M. Hopkins, of Denton, for appellees.

DUNKLIN, Chief Justice.

The Bankers Life & Loan Association of Dallas was duly incorporated for the purpose of doing an assessment life insurance business on a mutual plan, authorized by Article 4859f, R.C.S., Vernon's Ann.Civ.St. art. 4859f.

On January 20th, 1936, the Association issued its policy of insurance, designated as Policy No. 86425, Group No. FR–F, by the terms of which it agreed to pay "two hundred fifty dollars, maximum sum, at its home office in Dallas, Texas, upon receipt of due and satisfactory proof of the death of Julia E. McDaniel, insured, age 70, during the continuance of this policy in force, to Mrs. Ella Wood, daughter, beneficiary, subject to all the provisions hereinafter contained in this policy, the application therefor, copy of which is attached hereto and made a part hereof, and the constitution and by-laws, as fully as if written over the signatures hereto affixed."

On the back of the policy, under the head of "General Provisions", is the following:

- "3. This policy together with the application for membership, copy of which is attached hereto and made a part hereof, and every application for reinstatement thereof, the Constitution and By-Laws and all amendments thereto, and the proofs of death, shall be and constitute the entire contract between the Association and the insured. * * *

"4. This Association is chartered and operating under the laws of Texas, and this policy is subject to the provisions thereof.

No representation, written, oral or otherwise made by any agent of this Association, and not contained in this policy, or the application therefor, shall bind the Association in any way, and there shall be no obligation resting upon the Association, or any of its members other than stated in the Constitution and By-Laws, this policy and the application therefor. * * *

"6. The insured has been classified as a member of the group shown on the face of this policy and it is agreed and understood that the obligation of the Association to make payment of the benefits hereunder is limited to the net Mortuary Funds collected from members of this particular group on one regular monthly premium, plus this policy's proportionate part of the net Mortuary Reserve Fund, the total amount not to exceed the maximum sum set out on first page of this policy. * * *

"11. The insured member herein named agrees by the acceptance of this policy, which must be signed in person, to all the terms and conditions stated herein, and in the application herefor, the Constitution and By-Laws now in force, or as may hereafter be amended, copy of which may be had upon request, and also agrees to pay to the Association within fifteen (15) days from date payments are due all amounts levied on this policy for the purpose of meeting all emergencies. For the convenience of policyholders premiums shall be collected monthly, or as needed. The insured further agrees that the Association's liability, if said policy be in force at the time of death, shall be limited to the net mortuary proceeds of one monthly premium received from each policyholder in good standing in his or her group, plus the deceased member's proportionate part of the net Mortuary Reserve Fund, not to exceed, however, the maximum amount stipulated on first page hereof. * * *

"13. This policy shall not be binding upon the Association until signed by the person in whose name it is written. * * *

"This 20th day of January, 1936. (Signed) Mrs. Julia E. McDaniel, insured member. Witness: (Signed) Mrs. Arden Weems, Luther Wood. Seal."

Attached to the policy is a copy of the application therefor, containing these stipulations:

"Do you hereby apply for insurance in Bankers Life & Loan Association of Dallas, Texas, and do you agree that the falsity of any answers herein shall bar your right to recover on any policy issued hereunder, and that the Association shall not be liable on account of the continuation or recurrence of any disability contracted or originating prior to date hereof, or as provided in the policy; and do you also understand and agree that the contract between you and the Association is entirely in writing, and that it is limited to this application, which is on file in the home office, the policy of insurance, and the Constitution and By-Laws as they now exist or may hereafter be amended or changed, and do you understand and agree that no oral statements are to bind either party to this agreement and that the contract is not binding until at least one assessment is paid in cash and this application is approved by the Association and the policy is issued and delivered to you and accepted during your continued excellent health and free from any disability? Yes. Name in full: Julia E. McDaniel. Occupation: Housewife. Address: Route # 2, Argyle, Texas. * * *

"I have read and examined a copy of the Policy and if a policy is issued to me, I hereby agree to accept same on the terms and conditions therein contained. I also agree that in no case shall any liability rest with the Association or its members, unless a policy is issued and delivered to and accepted by me while I am living and in excellent health. * * *

"Signed this 16th day of January, 1936. Agent: H. J. Blackman. Julia McDaniel, applicant. Mail policy for delivery to Mrs. Ella Wood; address Denton, Texas."

The Constitution and By-Laws of the Association were duly approved by the Department of Insurance. It reads in part as follows:

"Article 14. Certificates. The forms and provisions of certificates shall be such as are prescribed and accepted by the members or by the Board of Directors at any regular or special meeting. All certificate forms shall in no wise conflict with the Article of Incorporation, these By-Laws or with the laws of the State of Texas, which are applicable thereto; provided further that all certificate forms shall be submitted to the Board of Insurance Commissioners for approval before issuance of the same.

"Article 15. What Constitutes Contract. The certificate, together with the application therefor, and every application for reinstatement thereof, Charter, Article of Incorporation, and these By-Laws, with all

amendments thereto, as may be thereafter made,\ and approved by the Board of Insurance Commissioners, shall constitute and embody the contract between each such member and the Association. No statement or representation made by any agent or person, not contained in the certificate issued, or in the application therefor shall in any wise be binding upon the Association. No certificates shall be issued upon a limited payment plan, nor guarantee or promise to pay type of endowment or annuity benefits.

"Article 16. Coverage. The Association shall issue certificates only upon approval of applications therefor to persons eligible, who have qualified for the same. * * *

"Article 20. Contestability. * * * The policy being issued without medical examination, it is provided and agreed that if death occurs, from any cause, within ninety days from date of issue or within ninety days from date of any reinstatement, after lapse, the liability of the Association shall be limited to the amount of premiums paid after date of issue, or after date of reinstatement, plus interest on said amount at the rate of six per cent per annum, and the application for the certificate shall so provide. If death occurs from any cause after ninety days and within one year from date of issue of the policy, or any reinstatement thereof, after lapse, the maximum liability assumed by the Association shall be ten per cent of the maximum benefit provided therein."

Mrs. Julia E. McDaniel, the insured, died October 3rd, 1936, which was after ninety days, and within one year, from the date of the issuance of the policy.

According to allegations in plaintiff's petition, which the jury found to be true, the defendant's soliciting agent, H. J. Blackman, represented to the plaintiff and the insured, Mrs. Julia E. McDaniel, during prior negotiations for the insurance, that the company would issue to the insured a life insurance policy for the sum of $250, which would become operative at the time of its acceptance and would be payable in full upon her death, without any deductions therefrom; and that plaintiff and her mother believed such representation to be true and were thereby induced to accept the policy of insurance, upon which the suit was instituted. And further, that the defendant, through its said agent, H. J. Blackman, was guilty of fraud, in making those representations and in concealing from them the provision in the Constitution and By-Laws of the Association that in the event of the death of the insured within a year, only ten per cent of the face value of the policy would be collectible.

Upon the facts so alleged, plaintiff prayed that the policy be reformed, and, as reformed, enforced, in accordance with the representations so made by the soliciting agent, Blackman. According to further allegations and findings of the jury, the issuance and acceptance of the policy in the form it was written was not due to the mutual mistake of the parties.

Judgment was rendered, reforming the policy so as to require the payment of $250, and, as reformed, awarding plaintiff a recovery for that sum. The defendant has appealed.

Plaintiff's suit was not for cancellation of the policy for fraud, inducing its execution, and for damages resulting therefrom. It was a suit to reform the policy that was issued, so as to make it embody an obligation different from that expressed in the contract of insurance, and for its enforcement as so reformed.

■ A prior, binding, parol agreement on the part of the defendant to issue a policy for the payment of $250, without any diminution, upon the death of the insured, was a necessary primary basis for the reformation. The alleged fraudulent representation of Blackman, defendant's soliciting agent, and findings of the jury thereon, that the defendant would thereafter issue a life insurance policy which would unconditionally bind the defendant to pay the beneficiary the sum of $250 upon the death of the insured, was legally insufficient to show right of reformation of the policy, because:

(1) Both by paragraph 11, Article 4859f, R.C.S., Vernon's Ann.Civ.St. art. 4859f, § 11, and by the defendant's Constitution and By-Laws, of which the insured had notice, Blackman, the soliciting agent, was without lawful authority to bind the Association by such an agreement. Hemphill County Home Protective Ass'n v. Richardson, Tex. Civ.App., 264 S.W. 294, writ refused; Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S.W. 456, 288 S.W. 115, 47 A.L.R. 876; Wirtz v. Sovereign Camp, W. O. W., 114 Tex. 471, 268 S.W. 438; Parrott v. Brotherhood of Railroad Trainmen, Tex. Civ.App., 85 S.W.2d 306, writ refused; Bankers Life & Loan Ass'n v. Chase, Tex. Civ.App., 114 S.W.2d 374; Bankers' Life

& Loan Ass'n v. Bond, Tex.Civ.App., 113 S. W.2d 1001; Southwestern Casualty Co. v. Leach, Tex.Civ.App., 98 S.W.2d 1016; American Nat. Ins. Co. v. Huey, Tex.Com. App., 66 S.W.2d 690. And especially so in view of the provision in the policy in controversy, over the signature of the insured, reading: "I have read this policy and I understand each and every condition and provision contained herein, and I of my own accord accept same and agree to be bound thereby, and I warrant that I am·in excellent health at this time." Northwestern Nat. Life Ins. Co. v. Evans, Tex.Civ. App., 214 S.W. 598; Bankers Lloyds v. Montgomery, Tex.Com.App., 60 · S.W.2d 201; Southern Surety Co. v. Benton, Tex. Com.App., 280 S.W. 551; Home Benefit Ass'n v. Griffin, Tex.Civ.App., 10 S.W.2d 568.

■ (2) Such representation, even though made with fraudulent intent, was promissory only, and not a misrepresentation of facts. 20 Tex.Jur., par. 16, p. 31, par. 18, p. 35, par. 90, p. 134; 36 Tex.Jur., par. 8, p. 724. And was made prior to the issuance and acceptance of the policy. 23 Ruling Case Law, par. 21, p. 328. Union Central Life Ins. Co. v. Short, Tex.Civ. App., 212 S.W. 225.

■ (3) There was an absence of pleading or proof, or finding of the jury, that the insured was induced to accept the policy by any misrepresentation or fraud of any character, practiced upon her at the time of its acceptance, which induced her to believe it provided for payment of $250 in full upon the death of the insured, without any deduction therefrom.

Under the authorities ·above noted, the allegations in plaintiff's petition and findings of the jury were wholly insufficient to warrant a reformation of the contract of insurance, as prayed for by the plaintiff; and therefore the judgment reforming the contract on those findings and awarding plaintiff a recovery for $250, the full face of the policy, was erroneous.

Without such reformation, plaintiff showed a clear right of recovery for $25, which was ⅒oth of the face of the policy, and that amount was duly tendered by the defendant in its pleadings and on the trial, and refused by plaintiffs. But plaintiffs had no right to recover any excess over and above that amount. ·

■ Accordingly, the judgment of the trial court will be reformed, so as to award plaintiffs a recovery ·for $25, and denying a ⸱ recovery for any excess over and above that amount, and as so reformed it will be affirmed. And since the defendant tendered to appellees the $25 before the suit was instituted, and kept the tender good in its pleadings, all court costs incurred in the trial court and in this court on appeal are taxed against appellees.