### TURNER v. BISCOE et al.

#### No. 5940.

Court of Civil Appeals of Texas.
Texarkana.

June 25, 1942.

Rehearing Denied July 30, 1942.

Jones & Jones, of Mineola, for appellant.

John D. Glass, of Tyler, for appellees.

WILLIAMS, Justice.

Under a deed dated March 23, 1938, and filed for record June 30, 1938, Sallie Turner, a feme sole, plaintiff below, conveyed the fee simple title to her ⅛ undivided interest in a 116-acre tract near Hawkins, Texas, to Ogden Biscoe, a defendant below, in her own separate estate. Sallie and Ogden are practically in accord that the consideration for this conveyance consisted of the promise on the part of Ogden to take care of and support Sallie during the remainder of Sallie's life. This consideration is so ex-

pressed in the deed. It will be assumed, and if necessary, conceded that Sallie in all respects relied upon this promise at the time she executed the deed. Under the terms of the deed the promise of support as therein set out became a covenant. Sisk v. Random, 123 Tex. 326, 70 S.W. 2d 689. No contention is made to the contrary.

In this suit filed October 24, 1940, Sallie pleaded a trespass to try title action, and in another count to set aside and cancel the deed. She alleged that at the time Ogden made above promise, Ogden had no intention to perform such promise, and at the time Ogden made the promise she had the intent then not to perform or to carry out; that Ogden made said promises and used them and each of them merely as false pretense to induce and procure the execution of the deed; that plaintiff relied upon same; and Ogden has failed and refused to care for and support plaintiff. Sallie, in her prayer for relief, asked for cancellation of the deed and for title and possession of the land. Ogden in pleading and evidence joined issue with above-named allegations of fraudulent intent and of failure to support Sallie.

It is apparent from the pleading that plaintiff predicated her right to a cancellation upon the allegations, in substance, that at the time the deed was executed and Ogden made the promise that she would care for and support plaintiff, Ogden then had the intent not to perform such promise.

In response to special issue No. 1, the jury found that since the date of the execution of the deed Ogden had not performed the promise to care for and support Sallie. Special issue No. 2 reads:

"Do you find from a preponderance of the evidence that at the time Sallie Turner deeded the land in controversy to Ogden Porter Biscoe it was the intention at that time on the part of the said Ogden Porter Biscoe not to perform the promise in said deed to care for and support Sallie Turner for the remainder of her life? Answer, 'She did not intend at that time to perform said promise,' or 'She did intend at that time to perform said promise.'"

To this the jury answered: "She did intend to perform said promise." Under the latter finding in response to the only ultimate issue submitted under the pleadings, the court entered judgment denying plaintiff a recovery.

Upon a hearing of the motion for new trial which among other things set up alleged misconduct of the jury in answering issue No. 2, the court found as a matter of fact that some of the jurors attempted to answer issue No. 1 so that plaintiff would recover the property sued for, and that when the jury answered "She did not perform the promise" some of the jurors believed by reason of such answer Sallie would recover the property sued for, regardless of how the other issues were answered; and that the above answer to issue No. 2 would not have been agreed to by some of the jurors if said jurors had believed that said answer would have precluded plaintiff from recovering. Plaintiff testified that since the deed was executed Ogden had not given her any food, clothes or money, and that she had earned her living by washing, cooking and other odd jobs. Plaintiff is corroborated in her claim that she had washed, cooked and done other odd jobs. Ogden claimed in her testimony, corroborated by other testimony, that she had furnished money, food and other comforts to plaintiff since the deed was executed; and had tendered plaintiff a home with defendant in Tyler. We think it is without question that the evidence presented an issue of fact whether Ogden had or had not performed her promise. The court concluded as a matter of law that some of the jurors were guilty of misconduct in thus discussing the effect of their answers, but that said misconduct was prejudicial to the rights of the defendant and not to plaintiff, who complains of said misconduct, and overruled the motion for new trial grounded upon same.

To sustain or to disturb this conclusion of the trial court is immaterial to the disposition of this appeal. Under the authorities when applied to the evidence and the pleadings in this record, we are of the opinion and so conclude that Ogden was entitled to an instructed verdict in her favor, as requested by her at the close of the evidence.

Conceding the sufficiency of the evidence to support the jury's finding that Ogden had not performed, and assuming the further fact that her failure to keep

the promise is wholly without excuse, this alone will not be regarded as fraud in its legal acceptation. Chambers v. Wyatt, Tex.Civ.App., 151 S.W. 864, with authorities there cited. Or, as stated in Beaumont Carriage Co. v. Price & Johnson, Tex.Civ.App., 104 S.W. 499, 500, "It is clearly not enough to prove the nonperformance and it will not do to say that from the bare fact of nonperformance it could be inferred that the intent not to perform originally existed * * *." For "otherwise every breach of a contract would amount to fraud." Chicago, T. & M. C. R. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 473, 31 Am.St. Rep. 39; 7 T. J. p. 935; 20 T. J. pp. 32, 33 and 158; 24 Am.Jur. p. 133. "It must, however, be made to appear by some testimony, direct or circumstantial, that at the time the party gave the promise there was no intention on his part to perform it." The burden rested upon plaintiff to establish by a preponderance of the evidence this fact. Selari v. Selari, Tex.Civ. App., 124 S.W. 997, 1002; 24 Am.Jur. p. 118, Sec. 278, p. 88, Sec. 256.

█ Sallie testified that she and Ogden had always got along; that Ogden had always been truthful and had always been true to her; that after the execution of the deed, "She (Ogden) might have asked me to move down there to her house. Yes, sir; I think she has asked me.

* * * I can't remember how many times she's been to my house, I wouldn't want to tell a story; I have been to Ogden's house in Tyler, I don't know how many times. * * * I have telephoned her collect I wanted some money or something like that, she come to see me but didn't bring it; it is quite natural, she might have given me a little money—I won't say she haven't given me none." At the time the promise was made, Ogden was financially able to perform. Ogden and Sallie continued on friendly terms and association after the deed was executed. This suit was filed on the day following Ogden's execution of an oil and gas lease on the land. The evidence reflects no disturbance of their friendly relationship up to this time. It reflects no demand prior thereto by Sallie for cancellation for nonperformance. It cannot be said that any of above facts reflect a fraudulent intent on the part of Ogden at the time of the promise, namely, she then intended not to perform. After an exhaustive search and study of the evidence in this record and of the briefs presented, we are unable to find any testimony, direct or circumstantial, which discloses an intent on the part of Ogden not to perform at the time she made the promise.

For the reasons indicated, the judgment of the trial court will be affirmed.