**COLEMAN v. AMMONS et ux.**

No. 14483.

Court of Civil Appeals of Texas. Dallas.
May 16, 1952.

Rehearing Denied June 13, 1952.

Motion to Certify Overruled July 18, 1952.

Saunders & Thurmond, Tyler, for appellant.

L. F. Sanders, Canton, for appellees.

CRAMER, Justice.

Appellees have filed a motion for rehearing attacking our original judgment herein reversing and rendering the cause for appellant. A majority is now of the opinion that our original judgment was not correct and that the motion for rehearing should be sustained.

Appellees' trial petition, omitting· heading and prayer, was as follows:

"(1) That by fraud, misrepresentation and over persuasion, the defendant did on or about August 4, 1949, cause the plaintiffs to make, execute and deliver to the defendant a promissory note in the amount of Three Hundred And Sixteen Dollars And Twenty Cents ($316.20) and payable in 36 monthly installments, providing among other things, that in case default was made in any one principal or interest payment the owner and holder thereof had the right and option to declare all of same due and to proceed to collect all of same as though it were due; that on the same month, day and year, the defendant, for the purpose of defrauding plaintiffs duly endorsed and transferred said note to Co-Operative Building & Loan Association of Tyler, Texas, a Texas corporation, who was a good faith purchaser and who after said plaintiffs had made two payments and learning that they had ·been defrauded and had executed said note after said labor and material had been misrepresented to them defaulted in said payments; the ·Co-Operative Building & Loan Association then ·brought suit in the County Court of Smith County, Texas, naming these plaintiffs as defendants and as a result of said suit said defendants were forced and ·compelled to pay over to, in cash, Co-Operative Building and Loan Association, the amount of Three Hundred and Thirty Dollars ($330.00), all of which said plaintiffs, as ·herein stated, were forced to pay and to suffer this damage because of the misrepresentation and fraud pra·cticed on them by Coleman Insulating Company, its agent, servant and employee, while a·cting in the scope of his employment for Thomas ·C. Coleman, d/b/a Coleman Insulating Company. (2) Plaintiff further shows that the defendant, a·cting by and through its duly authorized agent, servant and employee came to Van Zandt County, and to the home of the plaintiffs and represented to plaintiffs, in said County, that they were in the insulating business, would ·completely insulate the home and business establishment of plaintiffs, but that plaintiffs insisted their home and business did not need insulating, but that

said agent then represented and made a proposal, that and in a form, in which they proposed would completely prevent the presence and breeding of roaches, insects, mice, rats, spiders, and all other detrimental insects that usually hibernate, breed and remain in and about a home and business; that plaintiffs were persuaded to have said work done in Van Zandt County, Texas, and the same was done, by the defendants, in Van Zandt County, Texas, on land and premises located in Van Zandt County, Texas, and the plaintiffs allowed same to be done only after said agent had assured them that his company would, and did guarantee that said work and material would prevent the breeding and living of all insects and roaches, mice, as well as rats and all detrimental rodents; that as herein stated, said work was done and performed by Coleman Insulating Company, but that since said material and labor has been furnished and done, there has been no decrease in any of said insects and rodents but that they have multiplied and are in greater numbers than before said work and materials were furnished. (3) Plaintiffs further show that said cause as herein referred to, and as was filed by the Co-Operative Building and Loan Association, was filed and numbered in the County Court of Smith County, Texas, and numbered 7671, and that there was much humiliation and embarrassment to said suit and the plaintiffs have suffered damage to their character and reputation as a result of the fraud and misrepresentation practiced upon them by the defendant."

The prayer was for $330, plus expense of defense, etc.

Appellee himself testified as to his residence at Edom, Van Zandt County, and as to what happened on the occasion of the signing of the contract of appellant as follows:

"Q. Let me ask you this, Mr. Ammons: You knew what insulation was before you took this contract and executed it, did you not—in a general sort of way? A. Yes, I had heard of insulation, but I didn't know what all it would do.

"Q. You knew it was insulation between the two walls of your home to help in the cooling and warming of your home? A. I knew that went with it.

"Q. You knew that wouldn't kill ants and roaches, didn't you? A. I did not.

"Q. There is nothing in the contract that said it would? A. No, I don't know that there was, but the man that sold it to me swore that it would, and I have plenty of witnesses that heard him say it."

Ammons further testified that he did not get a copy of the contract at the time he signed it; that Mr. Coleman admitted to him that the salesman who took the order worked for him, but denied responsibility for what the salesman did. Ammons also testified that Coleman, referring to the salesman, said: "I have the laws hunting him, he is nothing but a crook." Ammons was corroborated as to his conversations as to the salesman's representation and guarantee that it would insulate the house against rats, roaches, insects and mice, by his wife and four other disinterested witnesses who heard the conversations. One of the disinterested witnesses, the Justice of the Peace at Edom, testified:

"Q. What did he tell Mr. Ammons? A. He told Mr. Ammons that it would absolutely deaden the sound, make it cooler and prevent and kill all insects.

"Q. Was anything said about rats? A. He said not anything, nothing would go through it or be in there at all.

"Q. It would cut them all out? A. Yes.

"Q. Did he say it would kill them or knock them out? A. Said it would kill them, or they wouldn't be there.

"Q. That was before any work was started? A. Yes. Mr. Ammons told him the main thing he wanted to get rid of was the mice and insects, and ants that come up through there."

█ Under such record, appellant Coleman was charged with the representations of his salesman, and sustained the court's findings of liability against Coleman, at least for nominal damages for fraud.

In 20 Tex.Jur. 115, sec. 77, the rule in Texas is correctly stated as follows:

"Nature and Form of Remedy.—A person who has been defrauded has alternative remedies. He may stand to the bargain and recover damages for the fraud in an action at law, or, resorting to equity, he may rescind the contract, return the thing bought and receive back what he paid; or, in a proper case, he may retain what he has received, and, waiving the fraud, bring his action, based on the contract, for damages sustained by reason of its breach; or he may set up the fraud by way of defense when sued on the contract or transaction. In some circumstances equity will grant appropriate relief by reforming the instrument to accord with the intent of the parties or by declaring a trust ex maleficio." See, also, 20 Tex.Jur., sec. 78, p. 117, id., and Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572, Commission of Appeals (holdings approved by our Supreme Court).

Appellant also asserts that there was insufficient allegation or proof of damages. The evidence shows the insulation to be worthless for the purpose for which Ammons bought it, to wit, that it was proper for and would accomplish the insulation of his building against insects, ants, mice, etc. The trial court found damages by reason of the fraud of the salesman of $275. Coleman, under his contract, was to receive $316.20 plus interest, etc., for the job and the innocent purchaser of said note received some $330 from the Ammons in payment thereof. The material question here is whether the evidence was sufficient to support the trial court's findings and judgment for $275. If so, the judgment must be affirmed.

Under the record, the insulation involved in the contract, became a part of Ammons' real property and good only for a purpose for which he had no need of it. The record is bare of testimony that it could be removed or that it added to the value of the property. Accepting the testimony of Ammons and his witnesses as true, as found by the trial court, it was clear that the insulation was of little or no value to him, and sustained the court's finding on the amount of damages ($275) suffered by Ammons.

For the reasons stated, the motion for rehearing is granted, our former judgment set aside, and the judgment below is now affirmed.

YOUNG, J., concurs.

BOND, C. J., dissents.

YOUNG, Justice (concurring).

Plaintiffs, when approached by defendant's agent, stated among other things that their principal concern in having house insulated was the elimination of rats, mice, bugs and insects, whereupon the agent verbally guaranteed that the system to be installed would absolutely eradicate all such rodents and pests and definitely prevent their return to the premises. In reliance on such representations, they say, the contract was signed and installation completed; and the trial court has established the falsity of such statements inducing contract and payment of consideration.

The writing does not cover any warranties of any kind; hence the principle invoked in Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, does not apply. However it does include the proviso: "It is understood that the entire contract is contained in this agreement and that no verbal or otherwise understanding shall be binding on the contractor"; which recital, it is argued, conclusively estops the house-owner from maintaining this tort action seeking damages because of

fraud in inducement of the written contract.

Aforesaid verbal guarantee was not inconsistent with the contract, and the court could reasonably have concluded that such was the inducing cause of its execution. In consequence, the principles reflected in the following decisions would appear to be controlling: "It is competent to prove fraud in a contract, although it be reduced to writing and is silent on the subject to which the fraudulent representations referred." Ranger v. Hearne, 41 Tex. 258, syl. 2. "Contracts, though reduced to writing, are avoided when induced by material promises, never intended to be kept, not because one is allowed to vary his written contract, but because real assent is essential to a binding contract. Using Elliott's phrasing: 'If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, such that, if he had known the truth, he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud.' 1 Elliott on Contracts, § 70." Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873, 874. " * * * an action of deceit lies, although the false representations were not embodied in, or their subject matter covered by, the writing containing all the terms of the contract, * * *. In an action for deceit inducing the execution of a contract, the parties' rights are not controlled by the terms of the contract, and an attempt by a contract to restrict the remedy of a party for fraud of the other party which induced the making of the contract is ineffectual." 37 C.J.S., Fraud, § 64, pp. 353, 354. "The rule that parol evidence is inadmissible to vary the terms of a written contract does not prevent the use of extrinsic evidence to attack its validity by showing fraud in its inception, notwithstanding the written contract provides that 'no conditions, representations, or agreements other than these' contained therein could be considered. Bankers'

Trust Co. v. Calhoun, Tex.Civ.App., 1919, 209 S.W. 826, error refused. Bankers' Trust Co. v. James, Tex.Civ.App., 1919, 209 S.W. 830, error refused." 16 Texas Digest, Complete, ☞434(8). "Where fraud induces execution and delivery of release, the release is voidable even though it contains statement that no representations induced its making and that no promises not expressed therein were made, and the party signing release read it and knew its contents." Texas & P. Ry. Co. v. Presley, 137 Tex. 232, 152 S.W.2d 1105, syl. 2. "Fraudulent statements by plaintiff's agent, if made to induce defendant to enter into written contract for purchase of property, were not merged in contract and papers executed in closing deal, so as to preclude defendant from recovering on counterclaim based on those statements." Horwitz v. Schaper, Mo. App., 119 S.W.2d 474, syl. 4.

I concur in the foregoing order setting aside our original judgment of reversal and affirming the judgment under review.

BOND, Chief Justice (dissenting).

In our memorandum original opinion, per curiam, in which all members were in accord, we reversed the judgment of the trial court and rendered judgment against appellees, plaintiffs in the court below, that they take nothing by their suit. On motion for rehearing, without any new grounds urged, dissension having arisen among members of this Court, we deemed it advisable to withdraw the original opinion per curiam and set aside the judgment based thereon, and write anew more extensively on the issues involved.

The primary controlling issues are whether the plaintiffs alleged and the evidence shows an enforceable oral promise or guaranty made contemporaneously with a written contract which was not performed by the promisor and made with the intention and purpose of inducing the plaintiffs to execute the note and written contract in question; and if so, whether the plaintiffs in the performance of the written contract by subsequently paying the consideration therefor in full, effectively waived all damages incident there-

to, thus estopped to claim that the contract was induced by fraud.

In order for a promise to constitute fraud, it is necessary that it should have been made with intent that it would not be performed and with the intention and purpose of deceiving. Cassel v. West, Tex.Civ.App., 1936, 98 S.W.2d 437, error ref.; Bankers Life, etc., Ass'n v. Wood, Tex.Civ.App., 123 S.W.2d 454, error dismissed. Failure to perform is not evidence of intent. Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118, affirming Tex. Civ.App., 164 S.W.2d 70; Warner v. Venture Petroleum Corp., Tex.Civ.App., 188 S.W.2d 596, error refused. If a promissory statement, although intended as a contractual promise, is not enforceable as such on a contract theory, then it cannot be made the basis of an action for fraud and deceit, even though made the intention of nonperformance. Recovery has been denied on a tort action for fraud and deceit, where the promise was part of a verbal contract which was unenforceable under the parol evidence rule. Mitcham v. London, Tex.Civ.App., 110 S.W.2d 140 (held not to constitute fraud such as to be a defense to a note); Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47 (opinion adopted by Supreme Court).

For an action to be allowed for breach of contract, it must be shown that all the requisites of a binding contract existed; for a tort action of deceit it must be shown that there was a fraudulent misrepresentation which was relied upon by the plaintiff to his detriment. Fraud generally must be based on a misrepresentation of a present or pre-existing fact and cannot be predicated on a mere implied promise. In the absence of any allegation or proof "by fraud, accident or mistake the written contract does not contain everything agreed to by the parties or that the execution of the contract was induced by fraudulent representations or artifice, parol evidence may not be introduced to prove representations or warranties *which form no part of the contract.* Particularly is this the rule where the contract expressly provides that it contains the entire agreement between the parties." 20 Tex.Jur. 171, sec. 117; Distributors Inv. Co. v. Patton, supra. (Emphasis supplied.)

In the case here, the contract in suit was in writing, dated July 29, 1949, agreed to, accepted and signed by the plaintiff M. R. Ammons, and, pertinent here, reads:

"We propose to furnish and install Fir Blak Insulation in building located at No.——Street——City Edom, State Texas, according to the following specifications: Insulate entire attic area. Also side walls, upstairs and floor overhead in service station—for the sum of Two Hundred Seventy Five ($275.00) payable as follows: $8.79 per mo. for 36 mo. (1) (Not Pertinent) * * * *It is understood that the entire contract is contained in this agreement and that no verbal or other understanding shall be binding on the contractor.* * * * *Keep outdoor temperatures outdoors."* (Italics supplied.)

Subsequent to the execution of said contract and in consideration of the $275 as stated therein, on August 4, 1949 the plaintiffs executed and delivered to the defendant a promissory note in the principal sum of $316, payable in 36 monthly installments, which was duly transferred to Co-Operative Building & Loan Association of Tyler, Texas, and which in effect carried all contractual rights and liabilities of the contracting parties. Subsequently the plaintiffs, makers of said note, paid to the assignee two of the aforesaid installments which became due for the months of August and September, 1949; and, because of default in payment of further installments, the Association declared the balance of the principal of said note due and instituted suit thereon in Smith County, which resulted in plaintiffs paying the balance of said note with accumulated interest and costs of suit.

On May 24, 1950 the present suit was filed in the County Court of Van Zandt County by appellees, as plaintiffs, against the appellant, as defendant, alleging, pertinent here: (1) "That by fraud, misrepresentation and over-persuasion, the de-

fendant did on or about August 4, 1949 cause the plaintiffs to make, execute and deliver to the defendant a *promissory note* in the amount of Three Hundred Sixteen Dollars ($316.20) and Twenty Cents, payable in 36 monthly installments * * *; that *on the same month, day and year,* the defendant for the purpose of defrauding plaintiffs duly endorsed and transferred said note to Co-Operative Building & Loan Association of Tyler, Texas, a Texas Corporation, who was a good faith purchaser and who after said plaintiffs had made two payments and learning they had been defrauded and had executed said note after said labor and material had been misrepresented to them, defaulted in said payments and the Co-Operative Building & Loan Association then brought suit in the County Court of Smith County, Texas, naming these plaintiffs as defendants, and *as a result of said suit* said defendants were forced and compelled to pay over to, in cash, Co-Operative Building & Loan Association the amount of $330, all of which said plaintiffs as herein stated *were forced to pay and to suffer this damage because of the misrepresentation and fraud practiced on them* by Coleman Insulating Company, its agent, servant and employee while acting in the scope of his employment for Thomas C. Coleman, d/b/a Coleman Insulating Company." (Italics supplied.)

The plaintiffs in further paragraph alleged that defendant, acting by and through its duly authorized agent, servant and employee, represented "that they were in the insulation business, would completely insulate the home and business establishment of plaintiffs, * * * *and made a proposal in which they proposed* would completely prevent the presence and breeding of roaches, insects, mice, rats, spiders and all other detrimental insects that usually hibernate, breed and remain in and about a house and business; and that plaintiffs were persuaded to have said work done * * * and *the same was done* by the defendants * * * only after *said agent had assured them that the company would and did guarantee* that said work and material would prevent the breeding and living of all insects, roaches, mice, as well as rats and all detrimental rodents; that as herein stated, said work was done and performed by Coleman Insulating Company, but since said material and labor has been furnished and done, there has been no decrease in any of said insects and rodents, but they have multiplied and are in greater numbers than before said work and material was furnished." (Italics supplied.)

The plaintiffs further alleged in subsequent paragraph "that said cause as herein referred to and as filed by the Co-Operative Building & Loan Association was filed and numbered in the County Court of Smith County, Texas, and numbered 7671, and that there was much humiliation and embarrassment to said suit and the plaintiffs have *suffered damage* to their character and reputation as a *result of the fraud* and misrepresentation practiced upon them by the defendant." (Italics supplied.)

In conclusion, plaintiffs sought "Upon hearing they have judgment in the sum of $330, plus such other reasonable amount as was necessary and that they did necessarily expend in the defense of said suit, as was filed in Smith County, Texas, together with such other and further relief both general and special, in law and in equity, to which they may be justly entitled."

The defendant interposed, first, plea in abatement to plaintiffs' petition for the reason same presents "a recovery of an amount from an endorser on a note, to-wit, the defendant, which was paid by them as makers to a third party, the Co-Operative Building, Loan & Savings Association of Tyler, Texas, as holders. That they were primarily liable on said note and defendant's liability, if any, was secondary and one of contract and guarantor as indorser. That where the primary obligor paid said obligation to the holder, all parties secondarily liable were relieved from liability. That it is now too late to sue defendant on a failure of consideration after the note has been paid. The holder could have sued the indorser on his contract or indorse-

ment, but could and did in this case elect to hold the makers and when the makers paid said note, they relieved all other parties who might be liable thereon from any other liability."

Second, a special plea that defendant entered into the written contract of July 29, 1949 which "fully sets forth the undertakings, promises and agreements of defendant as made to plaintiffs by defendant's agent and said agent had no authority to contradict the same or vary the terms thereof if he did. That the work agreed to be performed and materials to be furnished under said contract were complied with and performed by defendant, and in this connection, upon the completion thereof, plaintiffs signed what is known as an FHA Title 1 Borrower's Completion Certificate in which they certified that the labor performed and the materials furnished were satisfactorily performed and furnished by defendant. In this connection, defendant would show that when plaintiffs paid off the note of Co-Operative Building, Loan & Savings Association of Tyler, Texas as heretofore alleged and as alleged in plaintiffs' petition, such acceptance and completion certificate was given to them * * *. That in addition to accepting said labor performed and materials furnished, plaintiffs further made two payments on said note, all of which constitutes a ratification of their agreement and plaintiffs are now estopped from claiming a failure of consideration and breach of the contract because of their payment and acceptance as aforesaid."

Third, the defendant denied each and every allegation of plaintiffs' petition except where specifically admitted, and demanded strict proof thereof, and prays for judgment that plaintiffs take nothing by their suit.

In limine, the trial court sustained defendant's exception to plaintiffs' petition wherein they sought damages to their "character and reputation" alleged to have been caused by the defendant having endorsed over to the Co-Operative Building & Loan Association the note executed by them to said defendant and the Associa-

tion having brought the suit against them; and overruled defendant's plea of estoppel.

No jury having been demanded, the cause was submitted to the court and judgment entered in favor of the plaintiffs in the sum of $275, with all costs taxed against the defendant, to which the defendant excepted and duly perfected appeal, assigning errors that the plaintiffs' petition states no cause of action, that the judgment is not supported by evidence and is against the evidence, and that the court erred in overruling defendant's plea in abatement and his special exceptions. The appeal is briefed on points of error germane to the assignments.

In consideration of the appeal the points are grouped.

The evidence is not in dispute. The plaintiffs admitted that they executed the note and contract as alleged; that they read the contract before signing it, but were uncertain, didn't remember, whether they read the merger clause in the contract reading: "It is understood that the entire contract is contained in this agreement and that no verbal or other understanding shall be binding on the contractor," and the further provision that the insulation would "Keep outdoor temperature outdoors." It is further admitted in plaintiffs' pleadings and evidence that the defendant insulated their home and business establishment with their insulating materials as provided in the contract; Mr. Ammons testified that he "knew in a general sort of way" before making the contract, that he "had heard of insulation but did not know all it would do," and further that he knew the insulation went between the walls of the house to help keep temperatures cooler in summer and warmer in winter, but he did not know that it would kill ants and roaches—the man who sold it to them "swore that it would, he told me that it would keep all bugs, roaches, rats, everything out; in other words, he made it strong enough he said *in three days* I wouldn't have any roaches, and I said 'If it will do that I want it done.'" He (Ammons) told his wife the same thing, that in three days we would have

no insects, etc. Mrs. Ammons and three other witnesses testified substantially as did Mr. Ammons,—varied a little. Mrs. Ammons said the agent told them "he (the agent) could insulate the house and *guarantee* it for ants and roaches, for them getting in the house, * * * that they would have no more roaches and ants." A Mr. G. C. Smith gave evidence that the agent told Mr. Ammons that the insulation would absolutely deaden sound and make a house cooler and prevent and kill all insects; that nothing would go through it or be in there at all; it would cut them all out; said it would kill them or knock them out. A Mr. Elmer Wyatt related that the agent told Mr. Ammons that "he would *guarantee* it to kill anything like that." A Mr. Bud Garner testified that the agent said that he told Mr. Ammons about the insulation killing all rodents such as ants, mice and rats—it would kill them. (Italics supplied.)

Summarizing, the evidence is to the effect that the agent's promise and guarantee that the insulation would eradicate all of the Ammons' insects and rodents and prevent their hibernation and breeding in and about the premises of plaintiffs; and that said insulation did not do as represented. There is no evidence that plaintiffs' home and business house were damaged as result of the insulation, nor is there any evidence of the value of the premises before and after the insulation. If anything, the evidence merely shows the breach of a parol contract, or failure of the consideration of the note given in consideration thereof; and that, too, outside the terms of the written contract. There was no attack on the contract, either by fraud, accident or mistake.

In Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, 48, our Supreme Court speaking through Judge Hickman on findings given the jury that representations had been made by an agent of the Investment Company outside of a written contract for the sale of a caterpillar, in that (1) it would be operated with little expense and by an inexperienced operator in muddy grounds, (2) that it was reasonably fit for the purpose *for* *which it was purchased,* and (3) that each of said representations was untrue and made to induce Patton to execute the contract and notes in suit, believing such to be true, the Court said: " 'If a valid and enforceable contract for the sale of the caterpillar tractor and wagon was executed, then no right of rescission, under the record in this case, exists. * * * In the case of a valid contract, all prior negotiations that the parties may have had, previous to the execution of the contract, must be considered as either waived or as merged into the written contract. By a valid and enforceable contract is meant such a contract that is neither void on its face, nor voidable because of fraud inducing its execution. In a suit to enforce such a contract, neither party can go behind its terms, to ingraft on it other terms not specifically, or by clear implication, contained therein; for there is a rule of law, as old as our jurisprudence, that extrinsic evidence cannot be received to vary the terms of a valid contract. Avery Co. v. Harrison Co. (Tex.Com.App.) 267 S.W. 254; White, Ward & Erwin v. Hager, 112 Tex. 516, 248 S.W. 319; Case Threshing Mach. Co. v. Hall, 32 Tex. Civ.App. 214, 73 S.W. 835; First National Bank, etc. v. Smith (Tex.Civ.App.) 183 S.W. 862; J. B. Colt Co. v. Kelly (Tex.Civ.App.) 270 S.W. 942.' * * * if by denominating them fraud the written contract may be set aside, then a written contract is of no higher dignity than an oral one. The rule forbidding the varying of a written contract by parol would become a dead letter if prior oral agreements were permitted to govern the parties rather than subsequent written agreements on the same subject matter. Attaching the label of fraud to the oral representations does not change their character. This precise question has been settled in this jurisdiction. In the case of Avery Company v. Harrison (Tex.Com.App.) 267 S.W. 254, 256, Judge German clearly disposed if it in this language: '* * * anything not agreed to by the parties, or that any promise, representation or warranty was omitted therefrom. Nor is there any allegation or proof that by any

fraudulent representation, artifice, or conduct the parties were induced to sign the contract, or that at the time it was signed they did not know or were prevented from knowing what it contained. Under these circumstances it is plain that defendant was not bound by any promise or representation made by Nordyke and Hamm, not contained in the written contract. J. I. Case Threshing Mach. Co. v. Manes (Tex.Com.App.) 254 S.W. 929; Bybee v. Embree-McLean Carriage Co. (Tex.Civ.App.) 135 S.W. (203), 205. * * *.' "

The case of Wright v. Couch, Tex.Civ. App., 54 S.W.2d 207, 209, was disposed of by this clear language from Justice Funderburk, approved by the Supreme Court in Distributors, etc., v. Patton, supra: "False representations, whether regarding matters of present or past existence, or whether, (in the nature of promises) of future existence, do not constitute actionable fraud if the contract which it is claimed they induced specifically provides to the contrary of such representations and no claim is made that the contract does not express the true agreement. To hold otherwise would be to permit a party to a contract, while admitting its provisions and claiming its advantages, and while conceding that it was executed with full knowledge of its provisions, to prove by parol evidence that the parties intended that one or more provisions, although clear and unambiguous, were intended to mean something different from, and possibly contrary to, the provisions expressed. This would be a clear case of varying a written contract by parol evidence." See, also, Cassel v. West, Tex.Civ.App., 98 S.W.2d 437 (writ refused).

The Parol Evidence Rule is "designed to apply chiefly where oral promise or warranty is claimed to be *a part of the parties' final agreement.* * * * Most courts in recent cases have consistently held that a merger clause provision in a written contract precludes showing prior or contemporaneous oral promises or warranties in the absence of fraud, accident or mistake, on the theory that such evidence would be varying or contradicting the writing in violation of the Parol Evidence Rule." 27 Tex. Law Review, pp. 361, 362.

It will be observed in the case at bar that the representation relied upon was, as in the cases of the above authorities, outside the written contract, with no pleading or evidence that the contract or the note was executed in manner as to bring either outside the condemnation of the foregoing authorities. And there is no suggestion in pleadings or proof of actual fraud that the plaintiffs were misled into executing the contract on July 29, 1949, or closing out the contract by executing the note on August 4, 1949. Even if such had been the case, the payment of the two installments due thereon for the months of August and September following their execution and paying the balance of the note at the instance of the suit in Smith County to the holders thereof, on the assumption merely that the holder was a bona fide holder in due course, the makers of the note and contract effectively waived all damages alleged in reference to their execution.

It is well settled, in principle, that a contractor may waive or lose the right to damages, or rescind the contract for fraud, breach of warranty, or failure of consideration for nonconformance if he pays the consideration after discovering the fraud, and had an opportunity to protect himself from liability or claim over by vouching into a suit for enforcement of the consideration, or a note given therefor, the defrauder. If one defrauded uses personal property after knowing of the fraud, he elects to use the property as his own, he abandons, or waives his claim for damages, etc. 77 A.L.R. p. 1178.

There is no allegation whatsoever on the part of plaintiffs, nor proof that by reason of any fraud, accident or mistake, the written contract did not contain everything agreed on by the parties or that any promise, representation or warranty was omitted therefrom by fraud, accident or mistake. Nor is there any allegation or proof that by any fraudulent represen-

tation, artifice or conduct, the plaintiffs were induced to sign the contract, or that at the time they did execute the contract and note they did not know, or were in any way prevented from knowing, what the contract contained. The evidence is undisputed that the plaintiffs had every opportunity to know what the contract contained, they read the contract. Thus under these circumstances it is untenable to hold that the plaintiffs were not bound by the contract and note; thus escaped liability by parol promise and representations of warranty made by the defendant's salesman that he or the defendant would guarantee the insulation to kill rats, ants, etc. If such promises or warranties could be grafted into an agreeable written contract, then a written contract is no more valuable than a verbal contract. Evidently the trial court erred in decreeing judgment in favor of the plaintiffs for the return of the money paid to the Co-Operative Building & Loan Association perforce of the suit in Smith County, in which they alleged in the form of their pleadings that the transfer of the note was the fraudulent act of the defendant upon which they seek judgment for the amount of the decree. The judgment should be reversed and here rendered that the plaintiffs take nothing by their suit and that defendant go hence and recover all costs herein expended.

I respectfully, in line of duty, though reluctantly because of friends, register my dissent.

## On Motion to Certify

CRAMER, Justice.

Appellant, by motion to certify, asserts that our "judgment overruling appellant's motion for rehearing and affirming the trial court is a decision in direct conflict with a decision of the Supreme Court and of other Courts of Civil Appeals and a decision of this Court." He further alleges that this is an appeal from the County Court of Van Zandt and the amount involved is under $1,000, and therefore the Supreme Court has no jurisdiction.

Assuming that appellant's allegations as to conflict are correct, we still cannot sustain the motion since that fact, alone, gives the Supreme Court jurisdiction. Conflict is an exception to the general rule. Joseph Zukin of California v. Archer, Tex. Sup., 238 S.W.2d 171.

The motion to certify is overruled.

BOND, C. J., dissents, consistent with his dissenting opinion.